DANIEL H. BRACKETT *vs.* GEORGE BREWER.

Cumberland.     Opinion December 3, 1880.

*Exceptions.     Statute of frauds.     Requested instructions.     Practice.*

The plaintiff and certain others advanced a sum of money to the defendant for the purpose of paying a mortgage on a certain meeting house, upon an alleged oral promise of the defendant to appropriate the money to that purpose and to cause the meeting house to be conveyed to the plaintiff and his associates, which latter promise the defendant refused to fulfill, alleging in defence that he was acting as agent of the Methodist Episcopal Society of the place and that the plaintiff knew it. In assumpsit by the plaintiff to recover the money advanced by him; *Held,* that an exception "to that part of the charge which connects the 'trustees of that church' with the case at bar," is too general, when eight of the eleven pages of the charge mentions the subject matter of the exception.

*Also held,* that the refusal to instruct the jury, that if the defendant at any time, had become a party to an agreement with the plaintiff and others, that the church property should be conveyed to the plaintiff in consideration of money paid to him by the plaintiff and others, and the defendant as trustee or otherwise, held the property under his control, the verdict should be for the plaintiff, if the defendant neglected to make such conveyance, affords no ground to the plaintiff for exception, especially when there is no evidence that he held the property under his control as trustee or otherwise.

An oral contract to execute and deliver a deed of real property is within the statute of frauds.

An exception to the refusal to give a requested instruction will not be sustained, when the request is not based on some specific evidence in the case.

ON EXCEPTIONS from superior court, Cumberland county.

The facts appear in the opinion.

At the trial the attorney for plaintiff requested the presiding judge to give the jury the following instructions:

"3. That if the defendant by fraudulent representations induced the plaintiff to sign papers, he is estopped from claiming any different construction of said papers from that represented to the plaintiff to induce him to sign the same.

"4. That if the plaintiff, relying upon representations made to him by the defendant, signed certain papers without reading the same at the request of the defendant, the defendant is afterwards estopped from claiming a different construction than that given the plaintiff at the time of signing the same.

"5. That a party who contracts to execute a deed is bound to prepare and deliver the deed, and a deed, to be effectual to pass the title, must be acknowledged and delivered.

"6. That if the defendant at any time had become a party to an agreement with the plaintiffs and others, that the church property in Freeport should be conveyed to the plaintiff and others in consideration of money paid to him by them, and said defendant as trustee, or otherwise, held said property under his control, if he refused to give a deed making such conveyance, then he is liable to the plaintiff, and the verdict should be for the plaintiff."

*John J. Perry,* for the plaintiff.

The agreement of the defendant to convey the property upon the reception of the money to discharge the Whitmore mortgage, and, after the money was furnished, his refusal to carry out the agreement and convey the estate though demanded, the jury must have found, and that made out a case for the plaintiff. *Richards* v. *Allen,* 17 Maine, 297; *Bassett* v. *Bassett,* 55 Maine, 127; *Calais* v. *Whidden,* 64 Maine, 249; *Cook* v. *Doggett,* 2 Allen, 439.

But the jury were misled by the erroneous rulings and refusals to rule. The presiding judge in his charge to jury gave defendant the benefit of a defense not in the case, either by the pleadings or testimony. He said all the way through the charge that the defendant was an agent of the trustees; and the instructions, in so far as they related to the trustees and the agency of the defendant, were erroneous. R. S., c. 12, § 19; *Yarmouth*

v. *No. Yarmouth*, 34 Maine, 411; *P. B. Corp* v. *Lamson*, 16 Maine, 224; *Andrews* v. *Ins Co.* 37 Maine, 256; *Plummer* v. *P. L. Ass'n*, 67 Maine, 363; *F. Company* v. *Lewiston I. Savings*, 68 Maine, 43; *P. C. Company* v. *C. Com's*, 21 Pa. 9; *Persine* v. *C. & D. C. Co.* 9 *How.* 172; *Knowles* v. *Beaty*, 1 McLean, 41; *Farnum* v. *B. C. Company*, 1 Sum. 46; *B. B. Corp* v. *Whiting*, 29 Maine, 123; *Berry* v. *Yates*, 24 Barb. 199; *S. M. D. Corp* v. *Ropes*, 6 Pick. 32; *Bank of Augusta* v. *Earles*, 13 Pet. 519; *T. R. R. Co.* v. *Kneeland*, 4 How. 16.

The court should have given the sixth requested instruction, it was of vital importance and material to the issue. The fifth request should have been given. *Tinney* v. *Ashley*, 15 Pick. 546. The fourth request should also have been given.

In the closing argument, counsel cited: *Patterson* v. *Snell*, 67 Maine, 559; *Parker* v. *Hill*, 8 Met. 447; *Hawkes* v. *Pike*, 105 Mass. 560; *Brown* v. *Brown*, 66 Maine, 316; *Stebbins* v. *Jennings*, 10 Pick. 171; *Weld* v. *May*, 9 Cush. 181.

*H. G. Sleeper*, for the defendant, cited: *State* v. *Reed*, 62 Maine, 129; *Macintosh* v. *Bartlett*, 67 Maine, 130; *Harriman* v. *Sanger*, 67 Maine, 442; *Boothby* v. *Woodman*, 66 Maine, 387; *Foye* v. *Southard*, 64 Maine, 389; *Ins. Co.* v. *Hodgkins*, 66 Maine, 109; *Sanderson* v. *Brown*, 57 Maine, 308; *Rumrill* v. *Adams*, 57 Maine, 565; *Kilpatrick* v. *Hall*, 67 Maine, 543.

VIRGIN, J. The case finds that in September, 1874, one Lapham conveyed to the defendant and one Senter, a parcel of land in Freeport, upon which the grantees, in the following spring and summer, erected, and so far finished, a meeting house that it was dedicated according to the rites and usages of the Methodist Episcopal Church, and has ever since been used and occupied by the Methodist Episcopal Church of Freeport, as their place of worship; that the purchase money for the land was of the funds contributed by different individuals towards the building of the meeting house; that in August, 1875, the grantees mortgaged the premises to one Whitmore to secure their note to him for $800, money loaned for the construction and completion of the house; and that, at the date of the deed from Lapham, no trustees of the church had been appointed.

The plaintiff introduced testimony tending to prove that he and seven other persons named advanced to the defendant money enough to discharge the Whitmore mortgage, in consideration of the express verbal promise of the defendant to appropriate it for that purpose, and cause the mortgaged premises to be conveyed to the plaintiff, his seven co-contributors, and E. P. Oxnard and W. H. Bailey, the last two of whom held claims for materials which entered into the construction of the meeting house; that the plaintiff advanced $100, and his associates the balance, of the sum necessary to discharge the mortgage; that the defendant paid and caused the mortgage to be discharged; and that the plaintiff before the commencement of this action, demanded of the defendant a fulfillment of his promise—to cause a conveyance of the premises to be made to the persons named—and that he refused.

To this action (brought for recovering back the sum advanced by the plaintiff to the defendant, upon the ground that the defendant refused to convey the premises to the plaintiff and others in accordance with his alleged agreement), the defendant, in addition to the general issue, pleaded by way of brief statement that he received the money as agent and for the use of the Methodist Episcopal Society of Freeport, and that the plaintiff knew it.

In support of these issues on the part of the defendant, there was evidence tending to show that the defendant never promised or agreed with the plaintiff to convey to the latter or to him and others the church property, as security for the money paid by them for raising the mortgage; that the defendant and Senter— no trustees then having been selected—took the conveyance of the land from Lapham in their own names, but in fact in trust for the church, which was well known by the plaintiff and other members of the society; that they mortgaged the same with the meeting house thereon to Whitmore by direction of the society; that the plaintiff was appointed by the society a committee to raise money by subscription for the purpose of paying off the mortgage; that the defendant was the active business man of the society, and never received the money from the plaintiff in any

other capacity than agent of the society, which the plaintiff well knew; that the defendant and Senter, in May, 1875, executed and acknowledged a deed of the meeting house property to George Brewer and three others, regularly appointed trustees of the Methodist Episcopal Church, which remained in the defendant's possession until November, 1877, when it went into a scrivener's hands to enable him to make another deed, and was finally recorded in January, 1879; that in the absence of the preacher, the defendant was the proper and authorized custodian of all the papers of the church and board of trustees; that on October 10, 1877, the plaintiff and ten others signed an obligation under seal, thereby agreeing to accept a conveyance of all the property of the church in full for their respective claims, provided the conveyance is made within thirty days, and not to commence any action against the property within the thirty days, but to sell the property for the payment of their claims, as shall be determined by the major part of the demands; that on November 10, 1877, the defendant and two others—then the duly constituted board of trustees of the church—signed a deed of the meeting house property to the persons mentioned in the obligation above named, to hold the same in proportion to their respective claims; that this deed bears the name of no witness or certificate of acknowledgment, and has always remained in the hands of the defendant's attorney, who wrote it, until it was brought to court and put into a case as evidence at the time this case was tried. The defendant also put into the case a power of attorney of the defendant and three others of the parties named in the two preceding papers, to the defendant, and another purporting to authorize the attorneys named to sell the meeting house property to such persons and for such price as they shall see fit and make deed, thereof. The power of attorney was not witnessed or acknowledged, or signed by any of eleven owners, except four, and bore no date.

Upon the issues raised by the pleadings, the jury returned a verdict for the defendant, which may have been based upon the evidence bearing upon the general issue or the allegation in the brief statement that the defendant received the plaintiff's money as the agent of the Methodist Episcopal Society.

But while the plaintiff has submitted no motion to set aside this verdict as being against the evidence, he does seek a new trial through his exceptions, the first of which, in the order of argument, is, "to that part of the charge which connects the trustees of the Methodist Episcopal church of Freeport, with the case at bar."

We might properly dismiss this exception on the authority of *Harriman* v. *Sanger*, 67 Maine, 442 ; for on eight of the eleven pages of the charge, the trustees are mentioned, and we might well say that such an exception is altogether too general.  But if we understand the plaintiff's complaint in this connection it is, that, while the defendant claimed in his brief statement that he acted as the agent of the " society," the judge's charge proceeds throughout upon the theory that the defendant claimed to act as agent of the "church," or "trustees," and that the jury were thereby misled ; and those early cases in Massachusetts, especially *Stebbins* v. *Jennings*, 10 Pick. 182, in which the laws and usages of the congregational churches, parishes and societies are so lucidly explained by C. J. SHAW, are invoked, showing among other things the distinction between a religious society and a church, etc.  Our own statute (R. S., c. 12), in relation to parishes and religious societies, were derived from the Massachusetts stat. of 1751, 1785-6, and in similar cases the opinions cited would be high authority.  But there is a marked difference between the congregational and methodist episcopal rights and usages.  While the church in both denominations is the real party behind their corporation, the members of the corporation are not selected in the same manner.  The Methodists do not necessarily have religious parishes or societies in connection with their churches, but distinct therefrom ; but the statute furnishes them with a corporation to hold their property whenever the members of such corporation are appointed in accordance with their usages and customs, as it does every other protestant denomination including the Shakers.  *Anderson* v. *Brock*, 3 Maine, 243.

There is no evidence in this case of the existence of any Methodist Episcopal "Society" of Freeport, distinct from the

church of that name; and it is perfectly evident that all the paper evidence in the case signed by the plaintiff as well as by the defendant, and the testimony of all the witnesses use the words "church" and "society" interchangeably.

2. The sixth request was properly declined. The language of the request will apply to a past consideration which will not support a contract; and there is no evidence that the defendant "as trustee or otherwise held the property under his control" when the demand for the deed was made, to sustain the request. Neither could the deed be lawfully delivered without the consent of a majority of the trustees who executed, and there is no evidence of their will in the matter. If the defendant had no authority to make the contract alleged, the only remedy against him for making it, is an action on the case. *Noyes* v. *Loring*, 55 Maine, 408, and cases there cited. *Bartlett* v. *Tucker*, 104 Mass. 336, and cases. Requests should be made applicable to the facts in evidence; and the plaintiff's counsel says, "the defendant never by pleadings or testimony or otherwise pretended that he was acting in the capacity of trustee." (Opening argument, p. 61.)

3. The first clause of the fifth request was not given in its terms, for it is not sound as a legal proposition. "A party who contracts to execute a deed is bound to prepare and deliver it" only when such contract is in writing as required by the statute of frauds. R. S. c. 111, § 1. The case in 15 Pick. 546, relied upon by the plaintiff, was where the party gave a bond to convey. But the judge did give the jury the substance of what the plaintiff had a right to ask when he charged, that if the defendant "gave his individual promise that he would secure the subscribers by a conveyance of the meeting house, and they relied upon it when they parted with their money, then upon failure to convey on demand, the plaintiff would be entitled to recover the amount of his subscription from the defendant."

4. The third request was given in relation to the alleged fraudulent representations of the defendant. This was all the plaintiff could rightfully ask; and the fourth was rightfully declined. It is not limited to any papers in the case, and if it were it cannot be sustained. Estoppel cannot be applied to such facts alone.

These are the only requests concerning which the plaintiff complains.

The paper evidence to which the plaintiff entered a general objection was the strongest evidence in favor of the plaintiff's theory, of the alleged agreement; and the plaintiff's attorney well says in his brief (p. 5,) : "It corroborates the testimony of the plaintiff and his six other witnesses and flatly contradicts the defendant." We fail to see how he could be prejudiced by such evidence.

Upon a careful examination of this case, so far as the facts reported will allow, we think the plaintiff has no cause of complaint against the charge.

*Exceptions overruled.*

APPLETON, C. J., WALTON, PETERS, LIBBEY and SYMONDS, JJ., concurred.