DARIUS WELLINGTON *vs.* JOHN V. APTHORP, administrator.

Suffolk. January 20. — September 19, 1887.

In an action against the administrator with the will annexed of the estate of A., on an alleged agreement by A. to bequeath to the plaintiff $5000, an auditor, to whom the case was referred, found that the plaintiff was the brother-in-law of A., an unmarried woman, and lived in the same house with her, and advised with her as to her investments; that she said if she made a profit on one investment managed by the plaintiff she would give him one half, and on this she made a profit of $10,000; that, soon after, she told the plaintiff that if he would go on and act as her adviser she would make a will giving the plaintiff's wife a legacy of $5000, and if his wife died before the plaintiff she would, by a new will, leave this sum to him; that such a will was made; that, afterwards, the plaintiff assisted A. in making many profitable investments; that subsequently, when the plaintiff's wife was fatally ill, A. said to the plaintiff, that, if he would accompany her on a visit to California, she in consideration thereof, and in consideration of the services he had rendered and might thereafter render to her, would make a will leaving him $5000; that the plaintiff assented, and the will was made, the old will being destroyed; that the plaintiff accompanied A. on the journey proposed, and in all respects complied with the agreement; and that, subsequently, A. made a new will which revoked the former will and left nothing to the plaintiff. *Held*, that, these facts not being controverted, the judge who tried the case without a jury was not warranted in finding that the facts did not show that A. entered into a binding agreement with the plaintiff, or in finding that the agreement declared on was not proved as alleged; and that he should have found that the plaintiff was entitled to maintain the action.

CONTRACT against the administrator with the will annexed of the estate of Mary Chism, deceased, upon an agreement alleged to have been made by her with the plaintiff, on or about May 23, 1878, to bequeath to him by her last will the sum of $5000, and pay his expenses of a journey to California and Nevada in accompanying her there in the fall of 1878; and also upon an account annexed for services in managing her property, in accompanying her to California and Nevada, and for cash paid by him as expenses on said visit.

The case was referred to an auditor, who made the following report:

" The defendant is administrator with the will annexed of Mary Chism, deceased. Prior to 1853, Mary Chism, with two sisters, Charlotte and Octavia, kept a boarding-house in Boston. The plaintiff had boarded with them, and in 1853 he married Charlotte Chism. After their marriage the plaintiff and his wife continued to board with Mary Chism during the greater part of the time until the death of said Charlotte.

" About 1862, the two sisters, Mary and Octavia, had acquired by inheritance and their savings about $4000, which sum, by advice of the plaintiff, was withdrawn from savings banks and invested in United States bonds.

" Octavia Chism died in August, 1863, and her share in said bonds came into the possession of Mary Chism. In July, 1866, by advice of the plaintiff, Mary Chism invested the proceeds of said United States bonds in the equity of real estate on Rowe Street, afterwards Chauncy Street.

" While Mary Chism was owner of the equity of the Chauncy Street estate, and when there was a prospect of making a profit upon it of about $10,000, she told the plaintiff that if such profit was made by him he should have one half, or a part of it.

" In April, 1868, the equity of the Chauncy Street estate was sold at a profit of $10,000; this sale was negotiated and advised by the plaintiff. Shortly after this sale had been made, Mary Chism told the plaintiff, if he would go on and act as her agent and adviser respecting her investments, she would make a will, giving the plaintiff's wife a legacy of $5000; and, in the event of the plaintiff's wife dying before the plaintiff, she would then by a new will or codicil bequeath the legacy of $5000 to the plaintiff. The plaintiff assented to said arrangement, and, a day or two after this conversation, Mary Chism executed a will containing a legacy of $5000 to Charlotte, wife of the plaintiff.

" After the execution of said will, and while it was unrevoked, in June, 1868, Mary Chism purchased an equity in real estate in Washington Street, and sold it at a profit in January, 1869. In January, 1869, the plaintiff intended to purchase on his own account the equity of an estate in Bedford Street, and applied to

Mary Chism to borrow $2000, to be used in such investment; she expressed the wish to join in the transaction, and the plaintiff assented. They agreed that she should advance all the money, and, after receiving seven per cent interest thereon, the profits should be equally divided. She did furnish the money, and the title was taken, and mortgage given, in her name. After paying her the seven per cent interest, the profits of this investment were between $4000 and $5000, and were equally divided. The estate was sold, part in 1873, and the balance in 1874. In 1876 she purchased the equity of an estate in Mt. Vernon Street, which she retained at her death. All the above-mentioned purchases and sales of real estate were negotiated and advised by the plaintiff, and made solely upon his judgment.

" In June, 1878, the plaintiff's wife, Charlotte, died. A few weeks before her death, and when it was apparent that she was fatally ill, Mary Chism, with the knowledge of said Charlotte told the plaintiff that she desired to visit California, and a brother who resided in Nevada, and that, if the plaintiff would accompany her there in the fall of that year, she, in consideration of his so accompanying her, and of the services he had rendered, and might thereafter render her, respecting the management of her property, would make a will giving him $5000, and pay his expenses of the journey. The plaintiff assented thereto; and, thereupon, in May or June, 1878, Mary Chism destroyed the will before mentioned, and executed a new one, wherein she gave the plaintiff a legacy of $5000. At this time Mary Chism's property was about $23,000, and it had been acquired largely by the advice and management of the plaintiff; and I find that the plaintiff's advice was valuable and his management judicious, and were given and rendered whenever requested or required, and he has received no compensation therefor, except as stated respecting the Bedford Street property.

" In the fall of 1878, and the winter following, the plaintiff accompanied Mary Chism to Nevada and California, and then and thereafter in all respects complied with and fulfilled the aforesaid agreement. And I find that the items of cash paid by him for expenses of the journey, alleged in the account annexed to the declaration, and amounting to $473.24, were incurred by him, and are reasonable, and should be allowed.

" Mary Chism died, October 18, 1883, without issue and un-married, leaving a will, revoking all former wills, dated December 20, 1880, which was admitted to probate on November 12, 1883, and contains no legacy to the plaintiff.

" Whether or not, upon the facts stated in this report, the plaintiff is entitled to recover any greater sum than said $473.24, is reserved for the ruling of the court."

At the trial in the Superior Court, before *Bacon*, J., the plaintiff put in evidence the report of the auditor, and rested.

The defendant thereupon called the plaintiff, who testified that he was married again in November, 1879; that he did not inform Mary Chism, beforehand, of his intended marriage; that there was no occasion of his doing so; that he did inform her thereof, by a messenger, on the day of the marriage; and that she was not present at the ceremony; nor was any one else, except the necessary parties.

There was no other evidence in the case; and, upon the evidence, the judge found for the plaintiff in the sum of $473.24, with interest from the date of the writ, for the expenses of the plaintiff on his journey to California and Nevada. To this finding the defendant alleged exceptions.

The judge further found, that the facts stated in the auditor's report did not sufficiently show that a binding agreement was entered into by Mary Chism with the plaintiff to make a will in his favor; and that the agreement declared upon, whereby she was to bequeath to him by her last will the sum of $5000, was not proved, as alleged; and upon these issues found for the defendant. The judge also found for the defendant upon the items of the account annexed for services rendered in the management of said Mary Chism's property, and in accompanying her on a visit to California and Nevada. To these findings the plaintiff alleged exceptions.

The judge reported the case for the determination of this court.

*J. S. Patton*, for the plaintiff.

*A. M. Howe*, (*T. J. Homer* with him,) for the defendant.

C. ALLEN, J. It is not contended, on behalf of the defendant, that a contract, founded on a sufficient consideration, to make a certain provision by will for a particular person is invalid in law. The contrary is well settled. *Jenkins* v. *Stetson*,

9 Allen, 128, 132.  *Parker* v. *Coburn,* 10 Allen, 82.  *Canada* v. *Canada,* 6 Cush. 15.  *Parsell* v. *Stryker,* 41 N. Y. 480. *Thompson* v. *Stevens,* 71 Penn. St. 161.  *Updike* v. *Ten Broeck,* 3 Vroom, 105.  *Caviness* v. *Rushton,* 101 Ind. 500.

Nor is it contended that a contract to leave a certain amount of money by will to a particular person, though oral, is open to objection under the statute of frauds.  It is not a contract for the sale of lands or of goods; and it may be performed within a year.  *Peters* v. *Westborough,* 19 Pick. 364.  *Fenton* v. *Emblers,* 3 Burr. 1278.  *Ridley* v. *Ridley,* 34 Beav. 478.  *Kent* v. *Kent,* 62 N. Y. 560.  *Bell* v. *Hewitt,* 24 Ind. 280.  *Wallace* v. *Long,* 105 Ind. 522.  Such a contract differs essentially from a contract to devise all one's property, real and personal, which comes within the statute of frauds.  *Gould* v. *Mansfield,* 103 Mass. 408.

The obligation of such a contract is not impaired, though the consideration is to arise wholly or in part in the future, and though the person to whom the promise is made is under no mutual binding obligation on his part.

In *Train* v. *Gold,* 5 Pick. 380, 385, it was said by Mr. Justice Wilde, that, "if A. promises to B. to pay him a sum of money if he will do a particular act, and B. does the act, the promise thereupon becomes binding, although B., at the time of the promise, does not engage to do the act."  This doctrine was quoted with approval in *Gardner* v. *Webber,* 17 Pick. 407, 413, and in *Bornstein* v. *Lans,* 104 Mass. 214, 216; and it is also affirmed in *Goward* v. *Waters,* 98 Mass. 596.

In *Cottage Street Church* v. *Kendall,* 121 Mass. 528, 530, it was held that, "where one promises to pay another a certain sum of money for doing a particular thing, which is to be done before the money is paid, and the promisee does the thing, upon the faith of the promise, the promise, which was before but a mere revocable offer, thereby becomes a complete contract, upon a consideration moving from the promisee to the promisor; as in the ordinary case of an offer of reward."  See also *Paige* v. *Parker,* 8 Gray, 211, 213; *Hubbard* v. *Coolidge,* 1 Met. 84; *Todd* v. *Weber,* 95 N. Y. 181, 192; *Miller* v. *McKenzie,* 95 N. Y. 575, 579.

It is therefore in law competent for a valid oral contract to be made to leave a certain sum of money by will to a particular person, in consideration of services thereafter to be rendered by

the promisee to the promisor, provided such services are in fact thereafter rendered and accepted in pursuance of such contract, although the promisee did not bind himself in advance to render them. The performance of the consideration renders the contract binding, and gives a right of action upon it.

The objection mostly relied on by the defendant in the present case is, that the auditor's report does not conclusively show such a contract, upon such a consideration. The auditor does not in terms, as he might properly have done, make any specific finding upon the question whether there was such a contract; but he states the facts in detail, upon which he considered that question to rest, and leaves the determination of it to the court. The detailed facts stated by the auditor are not controverted, and the evidence upon which they were found is not before us. These facts are therefore to be taken as they stand, with no further explanation than is afforded by the circumstances. Looking at them in this manner, it is to be determined whether on the whole there is enough clearly and decisively to show that there was a contract, so that the judge who heard the case could not properly find the contrary; in other words, whether it appears that there was a promise by the defendant's testatrix sufficiently definite to bè enforced, and made with the understanding and intention that she would be legally bound thereby. A promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract. *Thruston* v. *Thornton*, 1 Cush. 89. Chit. Con. (11th Am. ed.) 12, 13.

Ordinarily, when there is a distinct promise, for a sufficient consideration, to do a particular thing, such promise is to be considered as a contract, unless there is something in the subject of the promise, or in the circumstances, to repel that assumption. But each case must be examined in the light of its own circumstances.

In the present case, it appears that the plaintiff was the brother-in-law of the defendant's testatrix, who was an unmarried woman; that he was early in the habit of advising with her about her business affairs, and not at the outset, if ever, in the expectation of being paid directly for his services. Nevertheless there soon came to be a recognition on her part that the plaintiff's services

were valuable in a money sense, and an intention to pay him for them in some form. By his advice, in 1866, she bought real estate in Chauncy Street, and sold it again in 1868 at a profit of $10,000, the sale being advised and negotiated by him. Prior to the sale, she told him that, if such profit should be made, he should have one half, or a part of it. In fact, nothing was paid to him at this time, but it appears that she already contemplated putting the relation between them on a business basis; and shortly afterwards she told him, that, if he would go on and act as her agent and adviser respecting her investments, she would make a will giving his wife $5000; and, in the event of his wife's dying before him, that she would then by a new will or codicil bequeath the legacy of $5000 to him. He assented to this, and she made her will accordingly, bequeathing $5000 to his wife. All this savored of a business arrangement. The sum mentioned was not greater than she had talked of paying to him as a part of the profits on the sale of the Chauncy Street real estate; indeed, not so great, for that was to be payable in 1868, while the bequest would not be payable till after her death.

In 1868, another purchase was made of real estate, which was sold at a profit in 1869. In 1869, he admitted her to share in a purchase of real estate in Bedford Street, which he had intended to make on his own account; the whole of the money was furnished by her; and in 1873 and 1874 the estate was sold at a profit of between $4000 and $5000 over and above the allowance to her of seven per cent interest on the purchase money, and this profit was equally divided between them. In 1876, a purchase was made of real estate on Mt. Vernon Street. All of these purchases and sales were negotiated and advised by the plaintiff, and were made solely upon his judgment.

Such were the relations of the parties up to 1878. She had paid him nothing for his services; but her will, bequeathing $5000 to his wife, had stood during all this time, according to the understanding between them in 1868. Nothing had been said or done to vary the effect of her promise to bequeath the legacy of $5000 to him, in the event of his wife's dying before him.

In 1878, a new arrangement was made. The plaintiff's wife was fatally ill, and died in June of that year. A few weeks before her death, and when it had become apparent that she was

fatally ill, the defendant's testatrix told the plaintiff that she desired to visit California, and a brother who resided in Nevada, and, if he would accompany her there in the fall of that year, she, in consideration of his so accompanying her, and of the services he had rendered and might thereafter render her respecting the management of her property, would make a will giving him $5000, and pay the expenses of the journey. The plaintiff assented thereto; and in May or June of that year she destroyed the will then existing, and executed a new one, wherein she gave to him a legacy of $5000. According to the terms of what she had proposed in 1868, she was by a new will or codicil to bequeath to him the legacy of $5000, in the event which was now at hand, if he would go on and act as her agent and adviser respecting her investments. - This he had done up to that time. She now proposed to him that she would make a will giving him $5000 in consideration of his accompanying her to California and Nevada, and of the services he had rendered and might thereafter render to her. There was no stipulation binding him to render such services for any particular length of time in the future. The most that could fairly be implied is, that he should render them as requested, and as long as he should be able to do so. Her proposition appears to have been intended as in the nature of business. The relations between the parties in the past had not been merely those of kindness and voluntary aid. The services which he had already rendered were substantial, and of a business character. They did not consist merely of advice, but he appears to have taken, to a large extent, the responsible charge of her business matters, and to have conducted them successfully. In addition to continuing such services he was now asked to accompany her to California, which he did, in the fall of 1878, and the winter following, a trip of several months. She proceeded at once to act upon his acceptance of her proposition, and made a new will accordingly. This new will remained unrevoked for two and a half years.

In view of all these circumstances, it seems to us that, upon a just construction of the auditor's report, there is not enough to repel the ordinary assumption, that the promise of the defendant's testatrix was a contract, which, when made, was intended and understood by both parties to be binding upon her.

The present case materially differs in its facts from *Maddison* v. *Alderson*, 8 App. Cas. 467; *S. C.* 5 Ex. D. 293, and 7 Q. B. D. 174. In that case doubt was expressed whether there was a contract, but the question was not finally determined. It depended in part upon a review of testimony, which is not fully reported. The terms of the alleged promise and consideration differed from those in the case before us in certain respects which might be found to be material. But the decision in that case turned finally upon the question whether, assuming a contract, it had been shown that there had been a part performance, sufficient to take it out of the statute of frauds; and it was held in the negative.

Upon the auditor's report, in the present case, we must now assume that the whole consideration stipulated for was performed by the plaintiff, and that it was sufficient. It is expressly found that his advice was valuable, and his management judicious, being given and rendered whenever requested or required; that he has received no compensation therefor, except as stated respecting the division of the profits arising on the sale of the Bedford Street real estate; that in the fall of 1878 and the winter following he accompanied her to Nevada and California, "and then and thereafter in all respects complied with and fulfilled the aforesaid agreement."

It is also suggested in behalf of the defendant, that, even assuming a contract, it was not proved to be a contract to make a will which should not be revoked. But looking at the language used, in the light of the circumstances existing and preceding, so narrow a construction of the contract is not permissible. The substance of it was, that she would bequeath to him the sum mentioned. An instrument effectual as a will was clearly contemplated. Otherwise, the promise was but illusory.

The result is, that, in the opinion of a majority of the court, the plaintiff was entitled to judgment for the sum of $5000 and interest, in addition to the amount found at the trial. The defendant's exceptions are overruled, and the plaintiff's exceptions are sustained. *Ordered accordingly.*

### MEMORANDUM.

On the fourteenth day of September, 1887, the Honorable MARCUS PERRIN KNOWLTON, one of the Justices of the Superior Court, was appointed a Justice of this Court, in place of Mr. Justice Gardner, resigned, and took his seat upon the bench on the twentieth day of the same month at the sitting of the court then held at Greenfield in the county of Franklin.