**UNION CAR ADVERTISING CO., Inc., v. BOSTON ELEVATED RY. CO.**

Circuit Court of Appeals, First Circuit.
June 13, 1928.

No. 2230.

1. **Frauds, statute of** ⬅⟾51—Oral agreement of elevated railway company to execute written contract awarding car-advertising privileges for 15-year period, subject to suspension or termination, held within statute (G. L. Mass. c. 259, § 1).

Oral agreement on part of elevated railway corporation to accept bid of car advertising company, providing it was the highest bid, and to execute written agreement pursuant to bid, by terms of which railway company would accord advertising privileges in its cars and busses for period of 15 years at specified rental, subject to abatement of grant during temporary suspension and to termination of contract in case of insolvency of the advertising company, *held* within the statute of frauds (G. L. Mass.

c. 259, § 1), as agreement to execute contract not performable within one year.

2. **Frauds, statute of** ⬅⟾51—Contract not performable within year is within statute, though contract may be terminated or further performance rendered impossible.

Fact that contract may be terminated, or further performance rendered impossible, within period of one year, does not take it out of the statute, where the obligation is one which cannot be performed within the year, since discharge from liability under contract is not performance thereof.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action by the Union Car Advertising Company, Inc., against the Boston Elevated Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Sherman L. Whipple, of Boston, Mass. (Claude B. Cross, of Boston, Mass., on the brief), for appellant.

F. H. Nash and Charles F. Choate, both of Boston, Mass. (Choate, Hall, & Stewart, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

BINGHAM, Circuit Judge. This is an action brought by the plaintiff, the Union Car Advertising Company, Inc., a New York corporation, against the defendant, the Boston Elevated Railway Company, a Massachusetts public service corporation, to recover damages for a breach of contract.

In the declaration it is alleged: That the plaintiff is engaged in the business of advertising in street railway cars, stations, and elsewhere, which business it conducts under contracts with street railway companies for the exclusive right and privilege, over a period of years, of placing and maintaining such advertisements. That the defendant is engaged in operating a transportation system in Boston and in its vicinity, comprising passenger cars and passenger motor busses leased or owned and operated by it, and elevated structures, subways, tunnels, and surface railways. That early in September, 1925, the defendant requested the plaintiff to submit a bid for the exclusive privilege of placing advertisements in all the passenger cars and passenger motor busses leased, owned, and operated by the defendant, promising the plaintiff that, if its bid for said privileges was the highest bid received, and if it could provide reasonable assurance of its ability financially to carry out said contract, the defendant would accept said bid

and would execute a contract, in a form proposed by it, a copy of which, marked "Exhibit A," was annexed. That the plaintiff, in consideration of and relying upon said offer and agreement of the defendant, thereupon made estimates upon said advertising contract, and on or about September 12, 1925, submitted to the defendant a bid for the same by executing the form of contract furnished it by the defendant above referred to, having inserted therein as its bid for the privileges, for the term proposed, the sum of money set opposite each year as follows: For the year beginning April 1, 1926, $402,-000, and for each year thereafter, down to and including the year beginning April 1, 1940, a sum increased by $10,000 over the immediately preceding year, making the total amount of its bid for the 15 years, for which the proposed agreement was to run, the sum of $7,080,000. That thereafter, on or about the 24th day of September, 1925, the defendant notified the plaintiff that its bid and all other bids received would be opened on October 1st at its offices, and requested the plaintiff to be present. That the plaintiff, by its duly authorized representative, was present at the meeting. That the plaintiff's and other bids were then and there publicly opened, and the plaintiff's was the highest bid, exceeding by $1,600,000 the next highest bid, and that the plaintiff thereafter, upon the defendant's request, furnished assurances satisfactory to the defendant of the plaintiff's ability financially to carry out said contract. That the plaintiff was ready and willing to execute the contract in accordance with the terms of its bid, but the defendant, in violation of its agreement with the plaintiff, has at all times refused and failed to execute said contract with the plaintiff, to its damage, etc.

In the proposed form of contract (Exhibit A), which the plaintiff filled out and submitted as its bid, the plaintiff was to have the advertising privileges "for the term of 15 years, beginning April 1, 1926," and agreed to pay therefor in each year during the term the sum of money set opposite that year (being the sums above stated in the declaration), and pay the same "in equal monthly payments on the first day of each month, the first payment to be made May 1, 1926." The form of agreement defined the privileges with respect to placing advertisements in passenger cars, in passenger motor busses, in stations, in station approaches and tunnels, and on the backs of all the transfers. It also contained the following provisions:

"Eleventh.—The Railway Company may require the Advertising Company to discontinue the display of any advertisements in or upon a station, station stairway, or any other place where such advertising may be located, whenever it may desire to repair, or alter, or reconstruct the same, or whenever such discontinuance is necessitated by any order of any public authority or in consequence of any legal proceeding or determination of any court, and the Advertising Company shall have no claim against the Railway Company, for damages or otherwise, by reason of such discontinuance, but the annual payment to be made under the terms of this agreement shall be abated in proportion to the extent and duration of such discontinuance.

"Twelfth.—It is further understood and agreed that if the Advertising Company, or its representatives, shall fail to keep and perform any covenants, agreements, or duties herein contained to be kept or performed by it, or shall become bankrupt or insolvent or attempt to assign any benefit or right created by this agreement, or shall make any assignment for the benefit of its creditors, or in any case any receiver of the Advertising Company shall be appointed, or it shall fail to make any payment required by the terms hereof for a period of twelve (12) days after the same becomes due and payable, then the Railway Company may, without notice, terminate forthwith this agreement and all the rights of the Advertising Company thereunder, and may, without being under any liability for so doing and without notice, remove all advertisements in its cars or busses or any of them, upon its stations or any of them, and upon its transfers, or any of them."

"Sixteenth.—In case of any catastrophe, strike, or fire, by reason of which the operation of the Railway Company shall be substantially suspended or interfered with, the Advertising Company shall receive from the Railway Company a reasonable allowance for the diminution of benefits thereby occasioned, which shall be on the basis of the annual rental to be paid by the Advertising Company at the time when such suspension of service shall occur."

"Twentieth.—This agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the contracting parties."

The defendant pleaded the general issue, and for a further defense said "that, if the plaintiff shall prove the promises alleged in its declaration, the same were not in writ-

ing signed by the defendant and were not to be performed within one year [and] hence, under section 1 of chapter 259 of the General Laws, no action lies therefor."

At the close of the plaintiff's evidence, the defendant presented a motion for a directed verdict in its favor, which was granted. It apparently was granted on the theory (1) that neither Mr. Jackson, the chairman of the defendant's board of trustees, nor Mr. Dana, its general manager, had authority to promise or agree with the plaintiff that, if its bid was the highest and it could provide reasonable assurance of its ability financially to carry out the contract, the defendant would accept its bid and execute a contract in the form proposed in "Exhibit A," and that the board of trustees did not ratify their action; or (2) if there was such authority, the promise or agreement was unenforceable.

The plaintiff complains in its assignments of error that the court erred in excluding and striking out certain testimony relating to the promise or agreement claimed to have been made by the defendant through its officers and chairman with the plaintiff, and in directing a verdict for the defendant.

The case has been argued by the defendant on the basis that, if the evidence excluded or struck out be regarded as received, it only tended to prove an oral promise or agreement on the part of the defendant that, if the plaintiff's bid for the advertising privileges was the highest, and if it could provide reasonable assurance of its ability financially to carry out a contract for such privileges, the defendant would accept its bid and execute a contract in the form proposed in Exhibit A, and that under the law of Massachusetts an oral contract to execute a written agreement, which by its terms is not and cannot be performed within a year, is within the statute of frauds, the same as an oral contract to execute a written agreement to convey land, or to execute or deliver a deed of land. If this is so, it is decisive of the case, for Massachusetts is not only the place of the forum, but where the alleged contract was made.

In Boyd v. Greene, 162 Mass. 566, 568, 39 N. E. 277, 278, the plaintiff brought an action of contract against the defendants for refusing to sell certain real estate to him at an auction where he was the highest bidder, the defendants having announced through the newspapers and having posted placards that the real estate would be sold by public auction to the highest bidder without reserve. The trial court refused to rule that the contract was within the statute of frauds. The jury found a verdict for the plaintiff and the defendants alleged exceptions. The court said: "The case at bar is not an action to recover for the trouble and expense of attending the auction under the inducement held out by the defendants in their advertisement. * * * It is an action to recover damages because the defendants, through their agent, the auctioneer, did not sell the property to the plaintiff, or did not do what was necessary to make a valid sale of the property to him, as they had agreed to do. The damages recovered are the difference between the sum bid and the value of the property. The jury must have found that the defendants, through their agent, the auctioneer, impliedly promised the plaintiff that if he would bid $1,750 for the property, and, if this was the highest bid, the property should be knocked down to him, and a sufficient memorandum in writing of the sale should be made by the auctioneer, and that the defendants broke this promise. Is such a promise within the statute of frauds? A contract to make a will of real property in favor of another person is within the statute of frauds, although a contract to leave a certain amount of money by will to such a person is not. Gould v. Mansfield, 103 Mass. 408 [4 Am. Rep. 573]; Wellington v. Apthorp, 145 Mass. 69 [13 N. E. 10]. A contract to execute a bond of defeasance or a deed of reconveyance by the grantee of an absolute conveyance of real property is within the statute of frauds. Boyd v. Stone, 11 Mass. 342; Ahrend v. Odiorne, 118 Mass. 261 [19 Am. Rep. 449]. There are certain contracts which have been held to be only collateral to a contract for the sale of land, and so not within the statute; but an oral contract to execute a valid written agreement to convey land is, we think, as much within the statute as an oral contract to execute and deliver a deed of the land. Lawrence v. Chase, 54 Me. 196; Richards v. Richards, 9 Gray [Mass.] 313; Browne, St. of Frauds, § 266. We think that the court should have ruled that the talk between the plaintiff and the auctioneer, even if it amounted to a contract, was within the statute of frauds."

In Sarkisian v. Teele, 201 Mass. 596, 88 N. E. 333, the contract under consideration was an oral one to execute an unsigned written contract of the defendant to sell to the plaintiff his stock in trade and to lease to him the store premises for a term of years. The action was a suit in equity for specific performance. The court below ruled that the bill be dismissed. In the Supreme Judicial

Court it was said: "If the bill is considered as seeking to enforce an oral promise by the defendant to enter into the formal writing, as containing all the essential elements of the contract, it cannot be maintained. The agreement proposed should be construed as embracing the sale of personal property, and the transfer of the defendant's leasehold interest in the premises. Locke v. Homer, 131 Mass. 93 [41 Am. Rep. 199]; Cincinnati, Sandusky & Cleveland R. R. v. Indiana, Bloomington & Western Ry., 44 Ohio St. 287, 314, 315 [7 N. E. 139]. By the statute of frauds such an agreement was required to be in writing, and an oral promise to execute a contract embodying these terms also comes within the statute. Colman v. Packard, 16 Mass. 39; Stevens v. Stevens, 11 Metc. [Mass.] 251 [45 Am. Dec. 203]; Glass v. Hulbert, 102 Mass. 24 [3 Am. Rep. 418]; Chase v. Fitz, 132 Mass. 359; Howard v. Easton, 7 Johns. (N. Y.) 205; Rev. Laws 1902, c. 74, § 1, cl. 4, § 5."

There the unsigned written contract which the parties orally agreed to execute was within the statute of frauds for two reasons: (1) It involved the sale of a stock of goods; and (2) it called for a sale and transfer of an interest in land. A claim was made that the contract was taken out of the statute by an acceptance of part of the goods. As to this the court said: "But if a sufficient delivery and acceptance are assumed, the stipulation of the plaintiff's assumption of the lease of the store for the remainder of the term cannot be separated from the sale of the merchandise and business, of which it evidently formed an essential part, and the contract being entire was within the statute."

Chase v. Fitz, 132 Mass. 359, 361, was an action for a breach of an oral contract between the plaintiff and the defendant's testator to execute an antenuptial contract, in which the testator in consideration of marriage agreed to pay the plaintiff during their joint lives the sum of $1,000 annually and at that rate for any fraction of time, commencing at their marriage and payable semiannually, and that at the testator's death his executors or administrators would pay the plaintiff, if living, the sum of $25,000. The court there said: "It of course cannot be contended, on this declaration, that such a contract was made in writing, or that an action could be sustained upon any such agreement if not in writing. It would leave but little if anything of the statute of frauds to hold that a party might be mulcted in damages for refusing to execute in writing a verbal agreement which unless in writing is invalid under the statute of frauds. We therefore have no hesitation in determining that the defendant's testator entered into no valid engagement to marry, and that the marriage, if promised, was only one of a large series of stipulations and counterstipulations dependent upon each other, and which required a writing for their validity. Gen. St. c. 105, § 1, cl. 3."

In McLachlin v. Village of Whitehall, 99 N. Y. S. 721, 114 App. Div. 315, it appeared that the plaintiff had a written contract with the defendant for lighting its streets from 1892 to 1897; that on May 5, 1897, the plaintiff and the trustees of the defendant village entered into an oral contract wherein it was agreed that if the plaintiff would increase his plant, so that he could furnish incandescent lights for private houses in the village, the trustees would renew the written contract for another term of five years; that the plaintiff spent about $10,000 installing an incandescent system, but the trustees refused to execute a written contract for the further term of five years. The jury having rendered a verdict for the plaintiff, judgment was entered and the defendant appealed. In reversing the judgment below the court said: "The question is therefore presented whether damages can be recovered for the breach of an oral agreement to enter into a contract which, under the statute of frauds, is required to be in writing. It is true that the oral agreement to enter into the written conract might be fully performed within a year or within a day. The action is not in form one to recover damages for a breach of a contract for lighting the streets and public places for a term of five years, but for damages consequent upon a breach of the verbal agreement to award such a contract to the plaintiff. The damages, however, claimed as consequent upon such breach, are none other than the same damages as would have been recoverable for a breach of the contract for lighting if it had been awarded to the plaintiff. * * * It is conceded that a contract for lighting for a term of five years would be void if not in writing, but if an oral agreement to enter into such a written contract is not also void, where the damages claimed for the breach of the oral agreement are not independent of it, but necessarily are the same as those which would arise from the breach of the written contract, the door would be open for the practical nullification of the statute of frauds in a large class of cases." See, also, Deutsch

v. Textile Waste Merchandising Co., 209 N. Y. S. 388, 212 App. Div. 681, 684.

In Green v. Pennsylvania Steel Co., 75 Md. 109, 23 A. 139, the action was upon a verbal contract by which the plaintiffs were to purchase a steamer known as the Olive, or some other steamer, and run the same into Sparrow's Point (a tract of land of which the defendant was the exclusive owner or lessee) and Baltimore- for a term of three years and the defendant was to give them the exclusive carriage by such steamer of freight and passengers between these points for a term of three years. The question was whether the contract was one that was "not to be performed within the space of one year from the making thereof and therefore within the statute of frauds, as it had not ·been reduced to writing by the party to be charged." In answer to this the court said: "It is an agreement to be performed within a fixed and definite time, and that time is a period of three years and such being the agreement, the statute declares that no action shall be brought upon it, unless the agreement shall be reduced to writing and signed by the parties. But this action it is said is not brought upon the agreement itself, but upon the refusal of the appellee [the defendant] to execute the agreement. In other words, although no action can be brought upon the agreement because it is a verbal agreement, yet it is contended that an action may be maintained to recover damages of the appellee because of its refusal to execute the agreement. Such a contention is, it seems to us, a contradiction in terms. If no action will lie upon the agreement, upon what principle can the appellee be held liable in damages for a refusal to carry out the terms of the agreement? The object of the statute was to prevent fraud and perjury in setting up verbal agreements not to be performed within a year, and the evidence in support of an action for the refusal by one of the parties to carry out such an agreement, must necessarily be the same—that is to say, parol evidence—as would be required in an action upon the agreement itself, thus coming directly within the mischiefs which it was the object of the statute to prevent. Such a construction is inconsistent altogether with both the spirit and the letter of the statute."

See, also, Brown v. True, 123 Me. 288, 122 A. 850; Brackett v. Brewer, 71 Me. 478; Lawrence v. Chase, 54 Me. 196; Hanson v. Marion, 128 Minn. 468, 151 N. W. 195; Cram v. Thompson, 87 Minn. 172, 91 N. W. 483; Howie v. Swaggard, 142 Miss. 409, 107 So. 556; Ledford v. Ferrell's Adm'r, 34 N. C. 285; Trammel v. Trammel, 11 Rich. (S. C.) 471; Hawley v. Moody, ·24 Vt. 603; Little v. Union Oil of Cal., 73 Cal. App. 612, 238 P. 1066; Falk v. Devendorf, 172 Wis. 10, 177 N. W. 894; Garnes v. Frazier & Foster (Ky.) 118 S. W. 998; Wood v. Midgley, 5 De Gex, M. & G. 41; Browne on the Statute of Frauds, § 284; Williston on Contracts, § 524-a (p. 1012).

[1, 2] As we understand it, it was virtually conceded by the plaintiff at the argument that under the law of Massachusetts an oral contract to execute a written contract for the sale or transfer of an interest in land is within .the statute of frauds and invalid. But the contention was that an oral contract to execute a written contract which was not to be performed within one year from the time it was made, or to execute an agreement made in consideration of marriage, or for the sale of a stock of goods, was not invalidated by the statute of frauds. We are, however, unable to see wherein a different rule should be applied in any of the cases mentioned from that applied where the subject-matter is the sale or transfer of an interest in land. No such distinction is drawn by the Massachusetts court as appears from the cases above cited of Sarkisian v. Teele and Chase v. Fitz. That court has construed the statute to be applicable where the situation concerned contracts for the sale of goods or made in consideration of marriage and undoubtedly would 'so construe it as applied to contracts not to be performed within a year.

The advertising contract was one not to be performed within a year from the time it was made. The period of performance was fixed and definite, to wit, 15 years. During this period of time the defendant was to accord the plaintiff advertising privileges in its cars and busses and at its stations, and during this period .the plaintiff was required to pay monthly a proportional part of the annual rental. It was not a contract, the obligation of which may be performed within a year, but one the obligation of which could not be performed within a year. Williams v. Pittsfield Lime & Stone Co., 258 Mass. 65, 154 N. E. 572; Doyle v. Dixon, 97 Mass. 208, 212, 93 Am. Dec. 80; Harper Transportation Co. v. Johnson & Higgins (C.· C. A.) 244 F. 936; Warner v. Texas & Pacific Railway, 164 U. S. 418, 434, 17 S. Ct. 147, 41 L. Ed. 495.

The eleventh, twelfth, and sixteenth clauses (above quoted) of the contract do not change its character and render it capable of performance within a year. The eleventh

and sixteenth clauses relate to the abatement of rent during temporary suspensions occasioned by certain named happenings, and the twelfth contemplates the termination of the contract for any of the reasons there specified. The fact that the contract may be terminated or further performance rendered impossible, does not take it out of the statute. To be discharged from liability under a contract is not to perform it. Doyle v. Dixon, 97 Mass. 208, 212, 93 Am. Dec. 80; Street v. Maddux, Marshall, Moss & Mallory, Inc. (App. D. C.) 24 F.(2d) 617, 618; Williston on Contracts, §§ 495, 496, 497, 498, 499, 500.

Where one has contracted orally to work for another for two years, for $100 for the first year and $200 for the second, and has partially or wholly performed the service agreed upon, the contract being one within the statute of frauds as one not to be performed within a year, it has been held that no action can be maintained on the contract (Hill v. Hooper, 1 Gray [Mass.] 131, 133), and that in an action of quantum meruit for such services, where the statute is insisted upon, the oral agreement is not competent evidence of the value of the services (Emery v. Smith, 46 N. H. 151). If it might be said that a like line of reasoning is applicable to the case now before us (where, according to the allegations of the declaration and the proofs, the only damages sought to be recovered are the profits which the plaintiff would have made under the advertising contract) and that evidence of such advertising contract should only be held to be inadmissible, that is not the method adopted in Massachusetts. The construction and application of the statute by the courts of that state, if not strictly according to its letter, carries out its spirit and purpose.

The judgment of the District Court is affirmed, with costs to the appellee.