### MASON–WALSH–ATKINSON–KIER CO. v. STUBBLEFIELD.

No. 8791.

Circuit Court of Appeals, Ninth Circuit.

Nov. 1, 1938.

736

Maslan & Maslan, Kahin & Carmody, and Orlo B. Kellogg, all of Seattle, Wash., for appellee.

Before HANEY and HEALY, Circuit Judges, and NETERER, District Judge.

HEALY, Circuit Judge.

The appeal is from a judgment awarding damages for breach of contract.

Appellant had a contract with the United States involving the construction of the Grand Coulee Dam on the Columbia River. Incidental to the operation quantities of steel scrap accumulated from the repair of machinery and in the demolition of · cofferdams. Appellee claimed to have contracted with appellant for the purchase of all its steel scrap, including that to be accumulated in the course of the operation subsequent to June 9, 1936, the date of the transaction relied on. Appellant admitted an agreement to sell the scrap in existence at the time of the sale but denied the more inclusive agreement.

For some months appellee engaged in the removal of the scrap, including current accumulations. In October appellant declined to make further deliveries and thereafter disposed of the material to other parties.

The negotiations for the contract in suit, concerning which appellee testified orally, had been had between appellee and one Myers, appellant's warehouseman. In the course of them Myers conferred with appellant's general superintendent, Slocum. A memorandum of the transaction was made out, of which appellee was furnished a copy, this writing being as follows:

"Mr. J. E. Myers
"Mr. M. H. Slocum

"Confirming conversation over the phone today with you, Mr. W. H. Stubblefield agrees to take our scrap @ $2.00 per ton. Also disposing of tin and non-salable material without cost to us.

"He agrees to clean up the scrap pile near the garage first with the understanding that he will get all scrap on the West side later.

"All scrap being loaded subject to inspection by myself or anyone else authorized by the MWAK Co.

"by J. E. Myers."

1. Appellant argues that the alleged contract was within the statute of frauds as not being in writing and as being an

Graves, Kizer & Graves, of Spokane, Wash., for appellant.

agreement that by its terms was not to be performed within one year.[1] It is said that the work of constructing the dam could not possibly have been completed within a year from the date of the contract, hence the agreement to sell future accumulations of scrap could not be performed within the year. A number of Washington cases are relied on.[2]

Assuming for the purpose of the discussion that the written memorandum would be insufficient to satisfy the statutory requirement, we think no writing was necessary. The agreement was not one which by its terms was not to be performed within one year. The contract pleaded was for the sale only of existing scrap and such as would accumulate during the course of appellant's operations. No definite time or quantity of material was indicated. Appellant's construction contract with the Government was terminable by the latter on thirty days' notice and was otherwise of uncertain duration, depending upon the making of appropriations by Congress, or the allotment of funds by the Public Works Administration. If for any reason appellant finally ceased operations within the year its contract with appellee would be fully performed by the delivery of all scrap accumulated. In such contingency appellee's agreement to buy would be completely performed by the acceptance of the accumulated material. Restatement of the Law of Contracts, § 198.

Appellant cites Doyle v. Dixon, 97 Mass. 208, 93 Am.Dec. 80; Washington, A. & G. Steam Packet Co. v. Sickles, 72 U.S. 580, 5 Wall. 580, 18 L.Ed. 550; Street v. Maddux, Marshall, Moss & Mallory, 58 App.D.C. 42, 24 F.2d 617; Union Car Advertising Co. v. Boston Elevated Ry. Co., 1 Cir., 26 F.2d 755, 58 A.L.R. 1067, and other cases pointing out the distinction between the performance of a contract within the limited period and its frustration through the happening of a contingency which excuses performance or renders performance impossible. It is true that the termination within the year of appellant's contract for the construction of the dam would frustrate that enterprise, but the happening of the contingency would not frustrate the agreement in suit or make impossible the complete performance of its obligations within the year, in accordance with its terms. The object of the engagement was not the production and sale of scrap, but, as appellant observes in its brief, "the prompt removal of waste materials from the dam site." The engagement was capable of performance within the year, even though the termination of appellant's operations within that time may have been thought highly improbable or was not expected.

As we read them, the Washington authorities relied on by appellant are in harmony with the views here expressed. The case of Fish Clearing House, Inc. v. Melchor, Armstrong, Dessau Co., supra, note 2, on which chief reliance is placed, involved elements not present in the situation before us. The object of the contract there in question was the purchase by one of the parties of yearly salmon packs. It was apparently contemplated that the efforts of the other party would be continued seasonally in order to induce the sale of recurring packs. The court observes that it is not possible "to lay down a general rule by which it may be determined that every contingency by which a contract may be terminated within a year takes it out or leaves it within the inhibition of the statute."

2. The state law (§ 5836-4, Remington's Revised Statutes) declares unenforceable a contract for the sale of goods exceeding the value of $50, unless there is some note or memorandum of the transaction. Appellant concedes that part performance will remove a contract from the operation of this statute, but contends that

---

[1] Sec. 5825, Remington's Revised Statutes, so far as material, is as follows: "In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) every agreement that by its terms is not to be performed in one year from the making thereof * * *."

[2] Union Savings & Trust Co. v. Krumm, 88 Wash. 20, 152 P. 681; Hendry v. Bird, 135 Wash. 174, 237 P. 317, 240 P. 565; Tracy v. Barton, 139 Wash. 440, 247 P. 734; Sunset Pacific Oil Co. v. Clark, 171 Wash. 165, 17 P.2d 879; Fish Clearing House, Inc., v. Melchor, Armstrong, Dessau Co., 174 Wash. 539, 25 P.2d 381; A. J. Hamilton, Inc., v. Atlas Freight, Inc., 184 Wash. 199, 50 P.2d 522.

738

the part performance relied on here was not necessarily referable to the contract pleaded—in other words, that the performance shown was as consistent with its own version of the agreement as with appellee's. However, scrap accumulating subsequent to the time of the contract, as well as material then in the bins, was delivered to appellee. The agreement testified to by appellant's witness, Myers, related only to scrap on hand at the time of the engagement. We think the part performance was clearly referable to a contract for the sale of future accumulations.

3. It is claimed that the agreement shown was unenforceable as lacking in mutuality, but the contention is without merit. The promise of appellant to sell existing scrap would, of itself, be sufficient consideration for the promise of appellee to purchase future accumulations. Sultan Ry. & Timber Co. v. Great Northern Ry. Co., 58 Wash. 604, 109 P. 320, 1020; Dent Lbr. & Shingle Co. v. Cedarhome Lbr. Co., 141 Wash. 593, 252 P. 141. Though appellant was under no obligation to produce scrap, its promise to sell its future accumulations exclusively to appellee would be sufficient legal detriment to support the promise of the latter to buy it. Texas Co. v. Pensacola Maritime Corp., 5 Cir., 279 F. 19, 24, 24 A.L.R. 1336; Williston on Contracts, § 104. It is suggested that appellee did not consider himself bound to take delivery of future material if it were not to his advantage to do so. Ordinarily the opinion of a party concerning the legal effect of his engagements is of no importance. Appellee introduced the written memorandum evidencing a promise on his part to purchase appellant's scrap at a designated price per ton, and the writing shows an additional promise to remove tin and other non-salable material without cost to appellant. The latter promise alone would furnish consideration for appellant's agreement to sell accumulating scrap exclusively to the promisee.

4. It is claimed that the oral agreement testified to was so ambiguous and uncertain in its terms as to be unenforceable. While the oral testimony was meager and not particularly persuasive, we think the case was properly submitted to the jury. When considered along with the evidence supplied by the written memorandum there was sufficient in the record to support the verdict rendered.

5. Finally, it is said there was no evidence of the authority of Myers to make the contract, and no proof of ratification. Without discussing the testimony in detail it is enough to say that there was sufficient on this phase to carry the case to the jury.

Affirmed.