**Carl A. S. COAN, Jr., Appellant,**

v.

**Victor J. ORSINGER and Tyler Gardens Corporation, Appellees.**

**No. 14519.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 25, 1958.

Decided March 19, 1959.

Petition for Rehearing Denied
May 13, 1959.

Mr. Walter H. E. Jaeger, Washington, D. C., with whom Mr. Edgar Parke Reese, Washington, D. C., was on the brief, for appellant.

Mr. Joseph G. Dooley, Washington, D. C., for appellees. Mr. John E. Kennahan, Washington, D. C., also entered an appearance for appellees.

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant [plaintiff] filed this action for breach of contract for personal services and damages resulting therefrom. The complaint alleges that on September 30, 1956, appellant discussed with appellee Orsinger, in the presence of witnesses, the terms of the contract. Appellant was to assume the duties of resident manager of an apartment development

operated by Tyler Gardens Incorporated, of which corporation Orsinger is president, for which services appellant was to receive $75.00 per week in addition to a rent-free apartment for the duration of the contract. This proposed agreement was to continue "until the plaintiff [appellant] completed his law studies as a student duly matriculated in Georgetown University Law Center, Washington, D. C. or was obliged to discontinue these studies." This agreement was confirmed orally the following day in the offices of appellees. On October 12, 1956, appellant assumed his duties as resident manager. On November 17, 1956, he received a letter [1] terminating the contract, and this termination was confirmed by Orsinger in an oral conference on December 1, 1956.

Orsinger, in his answer to the complaint, denied having entered into any contract on his own behalf but admitted that there was an oral contract with Tyler Gardens, whose agent he claimed to be in the making of the contract. He denied, however, that the contract was to last for any definite period alleging that it was terminable at the will of either party. Tyler Gardens admitted entering into a contract of employment with appellant but denied that it was to last for any stated period of time, claiming that it was terminable at the will of either party. Among other defenses, including the charge that appellant was properly discharged, appellees urged the defense of the statute of frauds. After the taking of appellant's deposition, appellees filed a motion for summary judgment (Fed.R.Civ.P. 56, 28 U.S.C.A.), which the court granted. This appeal followed.

Appellant's complaint and his deposition, construed most favorably for appellant (as they must be in this posture of the case), present no genuine issue of fact to be tried by a jury. Assuming, as we must, the truth of all his allegations, the suit is barred by the statute of frauds. The pertinent parts of the statute read as follows:

> Title 12, D.C.Code, § 302 (1951): "No action shall be brought whereby to charge * * * any person upon any agreement * * * that is not to be *performed* within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, which need not state the consideration, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized." [Emphasis supplied]

Appellant contends that the statute of frauds is not applicable to his alleged contract of employment with appellees since it could be performed within a year. This would result, it is contended, if appellant were obliged to discontinue his law studies because of "deficient scholarship or for some similar reason," [2] a contingency which could occur within a year.

---

1. That letter read:

November 16, 1956

Mr. Carl Coan
Tyler Gardens Corporation
399 West Broad Street
Falls Church, Virginia
Dear Carl:

I have given further thought and reflection to our conversation of today and I feel that our seven weeks experiment, though noble, would not be fair to either you or the people I represent. In my opinion this job, like Parkwood, is too big to be handled on a basis where you can give it only part time attention. To try to do justice to your education and to my confidence in you may result in your education suffering and our friendship deteriorating.

Consequently, I am relieving you and Pat of any further duties at Tyler Gardens effective this date. However, I am sure my owners would not object if you wish to remain in the apartment, rent-free, until January 15, 1957, which is two months from today.

Kindest regards.

Sincerely yours,
ORSINGER AND DOOLEY
Victor J. Orsinger

VJO/ac

2. Quoting from affidavits of appellant's father and appellant himself.

■ That contingency contemplates an annulment of the terms of the contract and would operate as a defeasance, thereby terminating and discharging the contract. Further performance under the contract would be impossible by either party. This annulment or defeasance provision does not contemplate the performance of the contract but only its termination and cancellation. Although it could be annulled within a year, it was none the less a personal service contract to last for more than a year, *e. g.*, until appellant completed his studies at Georgetown University Law School. Although this annulment or defeasance provision relieves the parties from further performance of the contract, it is not the type of *performance* that is necessary to take the case out of the operation of the statute.

The court, in Blue Valley Creamery Co. v. Consolidated Products Co., 8 Cir., 1936, 81 F.2d 182, 185, spoke very clearly on this issue:

"* * * The statute looks to the performance and not the defeat of the contract, and a defeasance within a year would not constitute a performance according to the express intent of the parties, that performance should continue longer than a year.

"It is generally held that a contract for a definite period extending over a year is not taken out of the statute by an option allowing either party to terminate it within a year. The performance contemplated by the statute is a full and complete performance, and a cancellation is not such a performance. [Citing cases]

"*Much of the confusion in considering the applicability of the statute apparently arises from failing to keep in mind the distinction between a contingency of such a nature as fulfills the obligation and one that de-*feats *or prevents it from being performed.* The one that depends upon the defeasance or matter of avoidance is within the statute, while the other is not." [Emphasis supplied]

■ In Union Car Advertising Co. v. Boston Elevated Ry. Co., 1 Cir., 1928, 26 F.2d 755, 58 A.L.R. 1007, the court held that the fact that a contract may be terminated, or further performance rendered impossible, within the period of one year, does not take it out of the statute where the obligation is one which cannot be performed within the year; that discharge from liability under a contract is not performance thereof. Citing, among others, Street v. Maddux, Marshall, Moss & Mallory, infra, and Williston on Contracts, §§ 495, 496, 497, 498, 499, 500.

Street v. Maddux, Marshall, Moss & Mallory, 1928, 58 App.D.C. 42, 24 F.2d 617,[3] is authority for the proposition that a parol contract requiring three years for its performance is none the less a contract within the statute of frauds because it provides for annulment within a year, since annulment of a contract and its performance are distinctly different conceptions. There the owner of an apartment house in the District of Columbia sued on a verbal contract whereby he assigned the rents of that apartment to the defendant and authorized the defendant to pay itself a commission on the rents, in exchange for financial assistance required to prevent foreclosure. The agreement was to run for a period of three years unless the plaintiff sold the property during that period, in which event the agreement was to cease. Plaintiff sued because it was claimed that defendant failed to prevent the foreclosure. The defense was the statute of frauds.

On appeal, this court affirmed a judgment for the defendant, holding that the statute barred recovery. We held that it was apparent from the parol contract that the parties did not contemplate its *performance* within a year after it was

---

3. Blue Valley Creamery, Union Car Advertising, and Street cite and apply Warner v. Texas & Pacific Ry., 1896, 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495, hereinafter quoted on page 578 of 265 F.2d.

made, and that the fact that it should immediately cease and be of no effect if the plaintiff sold the property prior to the expiration of the year period contemplated *annulment* and not the *performance* of the contract.

We therefore held that the annulment of a contract and its performance are distinctly different conceptions and that, although the parol contract in issue might be annulled within a year, it was none the less a contract the performance of which required three years. The court stated:

"In Warner v. Texas & Pacific Railway, 164 U.S. 418, 434, 17 S.Ct. 147, 153 (41 L.Ed. 495), upon which appellant relies, the correct rule was laid down for determining whether or not a parol contract was within the statute of frauds when the court said: 'The question is not what the probable, or expected, or actual performance of the contract was; *but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year.*' (Emphasis by this court)". 58 App.D.C. at page 44, 24 F.2d at page 619.

The courts thus recognize a distinct difference between a contingency which fulfills the terms of a contract and one which prevents fulfillment. If the contingency which fulfills and completes the terms of the contract happens or could possibly happen within a year, the contract is not within the statute. On the other hand, if the contingency prevents or discharges the parties from performing their obligations under the contract within a year, then the contract is within the statute.

Here, on the present state of the record, there is an oral contract for personal services for a period exceeding one year but subject to annulment which might occur within a year. This in no way helps to further the *performance* of the contract but rather serves to defeat it, rendering performance impossible, and thus bringing the contract within the statute.

It seems clear, taking appellant's version of the contract, that it would be impossible to *perform* the terms of the contract within the space of one year, since appellant had just started law school that fall (September 1956) and would not complete his studies before some time in 1959 at the earliest.

We see no force in the argument that defeasance should be restricted to an act of one of the parties, and this argument is not borne out by the authorities. But even if it were so, the defeasance here would be the result of appellant's act— voluntary or otherwise. The defeasance would occur if he should be obliged to discontinue his law studies because of poor or deficient scholarship, or for some similar reason.

We find it unnecessary to pass on other objections urged by appellees against the contract, although they seem to have merit. The contract certainly seems so vague and uncertain as to be unenforceable; and, from the deposition of appellant himself, it seems that the contract may be unilateral and not bilateral.[4]

---

4. See the following extract from the deposition of appellant:

"Q. Did he [Orsinger] tell you that you could not quit the Tyler Gardens job as long as you were in law school? A. No.

\*　　\*　　\*　　\*　　\*

"Q. He never told you that you could not quit the job at Tyler Gardens and find another one while you were still in law school, did he? A. No. But we had an understanding that I would hold the job while I was in law school.

"Q. Let me ask the reporter to read that question to you because the answer is not responsive.

(Question read by the reporter)

"A. I said no, but also said the agreement was that I would hold the job while I was in law school.

"Q. That you had told me before, but the basic answer to this question, which has just been read to you by the reporter was 'no,' was it not? A. That is correct.

"Q. In other words, there were no strings attached to this thing; you could

We have examined appellant's other contentions and find no error.

Affirmed.

DANAHER, Circuit Judge (dissenting).

This case involves an oral personal service contract, admittedly entered into. Appellees insist they are free, with complete impunity, to breach their own agreement, the plan of which originated with appellee Orsinger and the promises of which were undertaken by the appellee corporation.

Appellee Orsinger was president of the corporate appellee which in 1956 became the owner of Tyler Gardens, a 482-unit apartment development in Falls Church, Virginia. Orsinger's affidavit in support of the appellees' motion for summary judgment discloses that he knew that "one of the development's needs was a resident manager preferably a husband-wife team." He, for some years, had been a summertime neighbor of appellant's parents. From appellant's mother he learned, on September 30, 1956, that appellant had recently returned from Army service and had already secured a position as a real estate salesman. Upon his further ascertaining that appellant had registered as a student at the Georgetown Law Center, Orsinger suggested that he "might be able to offer a less precarious position but with compensation which would enable the plaintiff to take care of himself and his family and finance his education." Orsinger's interest in appellant stemmed not only from his friendship with appellant's parents, his neighbors, but from the fact, as he said, that he once had had the "double burden of financing my law school education and taking care of my family." Orsinger's proposition to the appellant was discussed in the presence of the latter's family, and appellant was asked to meet Orsinger the following day at the latter's Washington law office. "I told him that the position was available at a salary of $75.00 a week, plus a two bedroom apartment worth $93.00 per month." He was getting a college graduate and the assistance of the latter's wife for about $95 per week, all tax deductible to his company, a bargain, he might have thought.

Appellant accepted Orsinger's offer. In his reliance thereupon, he gave up his prospective employment with the real estate company. Upon payment of two months' rent, he obtained a release from the owners of the apartment he already had where he sacrificed his redecoration costs of $85. He undertook the expense of moving to Tyler Gardens, and about October 12, 1956, entered upon his duties as resident manager of Tyler Gardens. Some weeks later, without prior notice, appellant received from Orsinger a letter dated November 16, 1956, purporting to terminate appellant's service as resident manager and further advising "I am relieving you and Pat [appellant's wife] of any further duties at Tyler Gardens effective this date."

Against this factual background, appellant's complaint alleged that the contract was to continue in full force and effect "until the plaintiff completed his law studies as a student duly matriculated in Georgetown University Law Center, Washington, D. C., *or was obliged to discontinue these studies.*" (Emphasis added.)

Appellees rely here solely upon the Statute of Frauds, so I discuss no other point. They insist they may not be charged with liability for damages flowing from the breach since the contract was not to be performed within a year.

leave the Tyler Gardens job any time you wanted, could you not? A. That was not my understanding of it.

"Q. You mean Mr. Orsinger told you that you could not quit Tyler Gardens at any time while you were in law school. A. No. He did not tell me that, but my understanding was that I would not

quit on him and he would not quit on me.

"Q. But he did not attach any strings to you, did he? A. What do you mean by 'strings'?

"Q. He did not tell you that you could not quit the job at Tyler Gardens any time you wanted, did he? A. No. I have already said that. No."

580

Clearly, they argue, the oral contract was to run for nearly three years.

The agreement as alleged could have been performed in two ways. Under the first clause, the appellees could have continued to employ the appellant throughout his entire three year law school course. They could have continued the promised payments, and appellant with his wife could have rendered the managerial services as originally contemplated by all parties. Surely my colleagues must concede that as so outlined, the first clause could have been fully performed. Any contract must be tested by its terms, and complete performance as demonstrated, could so have been had in accordance with the terms stated here.

But it was not a case simply of a three year commitment by the respective parties. This agreement could have been fully performed in another manner. It was stated in the alternative. My colleagues fail to distinguish between a discharge from liability because of a refusal to perform the first clause, and the possibly complete and timely performance of the second. These parties agreed that appellees would engage the appellant's services until he "was obliged to discontinue" his law school studies. That eventuality might have depended upon many accounts, scholastic failure, financial strictures, prolonged incapacity because of Army service disability or what not. But it clearly could have occurred within the year.[1] Had it so developed, the contract would have been fully performed on both sides, exactly in accordance with its provision, precisely as the parties had agreed. Thus, if performance follows the terms, if it accomplishes what the parties specified, and if that result could have occurred within the year, the requirements of the statute are met. The contract called for performance until appellant "was obliged to discontinue" his studies. This contingency did not defeat the contract; it simply advanced a basis upon which it could be carried out. Obviously the statute applies only where performance of the contract in accordance with its terms can *not* occur within the year.

In other words we should examine the contract not in terms of nonliability for its breach but with respect to what was required for its performance. Thus viewed, we see that the parties agreed upon an alternative clause which admitted of performance within the year. Hence the contract was not within the statute.[2]

Clearly distinguishable are cases where the parties have agreed upon a basis—not for performance—but for defeasance of the contract. Our case of Street v. Maddux, Marshall, Moss & Mallory, 1928, 58 App.D.C. 42, 24 F.2d 617 is illustrative. There the plaintiff in exchange for financial assistance assigned to the defendant the rents from his apartment house and authorized the defendant to pay itself a certain commission out of the rents. The contract was to run for three years unless, within that time, the plaintiff decided to sell the property. Accordingly the right of the plaintiff to sell the subject matter of the contract was not contemplated to be a *performance* of it, but rather provided a basis for its defeasance. The owner's reserved right to terminate brought the contract within the statute.[3]

I think the governing principle here to be applied is to be discerned from the Supreme Court's discussion in the Warner case, supra note 1. There the Court criticized its earlier decision in Packet Co. v. Sickles [5 Wall. 580, 18 L. Ed. 550] which it noted was against the

1. Warner v. Texas & Pacific Railway, 1896, 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495.

2. 2 Corbin, Contracts §§ 445, 446, 454 (1950).

3. The Street case and Blue Valley Creamery Co. v. Consolidated Products Co. and

Union Car Advertising Co. v. Boston Elevated Ry. Co., cited by the majority, present typical defeasance situations, and have been so recognized. See, e. g., Mason-Walsh-Atkinson-Kier Co. v. Stubblefield, 9 Cir., 1938, 99 F.2d 735, 737; 2 Corbin, Contracts § 449 (1950).

weight of authority and not in accord with the terms of the contract itself. Concluding that the clauses considered were true alternatives and that the one did not state a basis for defeasance of the performance called for by the other, the Court said (164 U.S. at page 431, 17 S.Ct. at page 152):

> "The terms 'during the continuance of' and 'last so long' would seem to be precisely equivalent, and the full performance of the contract to be limited alike by the life of the patent and by the life of the boat. It is difficult to understand how the duration of the patent and the duration of the boat differed from one another in their relation to the performance or the determination of the contract; or how a contract to use an aid to navigation upon a boat, so long as she shall last can be distinguished in principle from a contract to support a man, so long as he shall live, which has often been decided, and is generally admitted, not to be within the statute of frauds."[4]

So here. Suppose the questioned allegation had read that the contract was to continue in full force and effect "until the plaintiff might be obliged to discontinue his studies, or until he shall have completed his law studies at Georgetown University Law Center." Can it be doubted that the parties thus would be seen to have agreed that performance would be deemed complete if continued until the appellant should have been obliged to discontinue his studies? Or can it be doubted that such an eventuality might occur within the year? As the Supreme Court said, such a contract clearly is "generally admitted not to be within the statute of frauds." The performance being thus complete, we see the parties achieving precisely what they themselves said would constitute performance. There is no element of defeasance in it, I submit.

Myriad cases support the distinction for which I contend and which, if applied, would take this case out of the statute. It is not to be supposed that certiorari would be granted here and more extended discussion will serve no special purpose. I think summary judgment should not have been granted.

4. As to the same point Corbin states:
"A * * * case that should be disapproved is Packet Co. v. Sickles, 1866, 5 Wall. 580, 72 U.S. 580, 18 L.Ed. 550 to use a contrivance for 12 years on a steamboat if the boat should last that long." 2 Corbin, Contracts § 446 n. 30.