## 719. BENTLEY *v.* SMITH *et al.*

1. Under the evidence in this case, the plaintiff could not recover on the contract, because the testimony did not show that such a contract had been made for the employment of the plaintiff as would authorize a recovery thereupon. It appeared, from the plaintiff's own testimony, that no definite price was fixed for his services, and that there was no agreement between the parties as to the value of his services, coupled with a mutual understanding, or an obligation (either by acquiescence or otherwise) on the part of the defendants, that such price should be paid by them.

2. It is not error to grant a nonsuit, where it appears from the evidence, without contradiction, that the contract of employment on which the plaintiff's right of action depended is for a period exceeding one year and is not in writing, and there is no evidence which brings the case within the exception provided by the Civil Code, §2694.

3. The part performance which will take a contract out of the operation of the statute of frauds is such as is, within the terms of the agree-

ment, an essential part of the contract, and, as such, is essential to the performance of the contract. The fact that the person who has contracted to serve another one year, to commence at a future day, enters upon the performance of his contract does not take the case out of the statute. The servant may quit at any time and recover the value of his services on a quantum meruit, and the master may discharge the servant at any time without incurring liability therefor.

4. A contract for permanent employment continues indefinitely, and is terminable by either of the parties at any time.

Complaint, from city court of Washington—Judge Hardeman. July 15, 1907.

Submitted November 26,—Decided December 9, 1907.

J. M. Pitner, F. H. Colley, for plaintiff.

William Wynne, W. A. Slaton, for defendants.

RUSSELL, J. Plaintiff in error brought a suit on a contract in the city court of Washington, alleging that on the 23d of November, 1906, the defendants in error employed him to work as a clerk in their store during the balance of 1906 and the year 1907, at $50 per month. The suit was for the unpaid balance claimed for the month of January, 1907. At the conclusion of the plaintiff's evidence, the court granted a nonsuit and dismissed the case; and exception is taken to this judgment. According to the plaintiff's evidence. he received a telegram from the defendants on the 16th of November, and in response to the telegram went to Washington and on the 23d of November entered into an agreement to clerk for them. The telegram was as follows: "Frank Bentley, Woodville, Ga. Dry Goods position open. $50 per month until January. Permanent position. Can you accept at once? O. & H. Smith." According to plaintiff's own testimony, all that was agreed between the parties was that the defendants would give $50 per month until January 1, 1907, and that they would then increase his wages. He testified that the defendants did not say how much his wages would be increased, nor did he ask. According to the plaintiff's testimony he left it with the defendant, Ollie Smith, as to any raise in his salary. In addition to this, the plaintiff testified, that the defendant, Ollie Smith, said that he wished to employ the plaintiff in a permanent job; that he replied that he could not move his family to Washington for anything less than a year and would not do so; that he moved from Woodville to Washington and that it cost him $40 to move. The plaintiff did not testify that it was

essential in any way to the contract that his family should be moved to Washington, nor that the defendants so understood it. He did testify that he moved from Woodville to Washington to comply with his trade with the defendants. The plaintiff was discharged on January 5, 1907, at which time the defendants paid him at the rate of $50 per month. The judgment of nonsuit was clearly right for two reasons.

1. The plaintiff alleged in his petition that he had a definite contract for $50 per month. His evidence did not confirm or support that allegation. It failed to show that there had been any definite agreement as to the sum to be paid him after January 1, and the suit was brought for the remainder of that month. The proof, so far from sustaining the allegations, failed to establish any contract at all for any stipulated sum per month. The amount to be paid, so far from being actually agreed upon, was to be determined thereafter by Ollie Smith, one of the partners. The only testimony in the case (that of the plaintiff himself) clearly established that no price was fixed for his services after January 1, and that there was no agreement, either expressed or tacit, on the part of the defendants that he should be paid that sum. The court could well have sustained the motion to nonsuit upon this ground. The plaintiff failed to prove his case as laid.

2. But even if the evidence for the plaintiff, in spite of the telegram which he introduced, can be construed as speaking a definite contract of employment, it was not error to grant the nonsuit, because the evidence showed that the contract of employment, upon which the plaintiff's right of action depended, was not to be performed within one year from the making thereof, and no evidence was adduced which would take it out of the statute of frauds. Civil Code, § 2693.

3. It is insisted, however, by counsel for the plaintiff in error, that there was such part performance as will except it from the operation of the statute of frauds. What is the part performance relied upon? It is found in the testimony of the plaintiff, that he moved his family from Woodville to Washington in order to carry out his contract. We do not think that there was such part performance of the contract as would take the case out of the statute of frauds,—such part performance as would render it a fraud on the part of the party refusing to comply. In Wood on

Master & Servant, 373, it is said, that "The fact that a person that has contracted to serve another one year, to commence at a future date, enters upon the performance of his contract does not take the case out of the statute, and the servant may quit at any time during the term and recover the value of his services rendered, upon a quantum meruit, without deduction for the loss to the employer, and the master may discharge the servant at any time without any liability therefor. There is no validity to such a contract, and it can not be enforced in any respect. If the wages are payable monthly, no action upon the contract can be maintained therefor, and the statute would be a complete defense thereto." So that the fact that he entered upon employment and served six weeks would not avail as part performance. Nor can the fact that the plaintiff in error moved his family to Washington at an expense to himself suffice to take the case out of the statute. It was at best a mere preliminary act (if connected with the contract in any way), a mere getting ready to perform. Acts which are merely preparatory or preliminary to the performance of the contract in question are not sufficient as part performance. 26 Am. & Eng. Enc. Law (2d ed.), 60. The part performance referred to in the statute is something substantial and is generally essential to the performance of the contract. Thus in *Petty* v. *Cannon*, 49 *Ga.* 468, the part performance of the tenant consisted in his not merely having paid the rent agreed upon for the time he had occupied the premises, but in his having expended money and labor, under the contract, in repairs upon the place, which paid for a longer use thereof. In *Barnett Steamers* v. *Blackmar*, 53 *Ga.* 98, it was held that the part performance that will take a case out of the statute must be the doing of something required by the terms of the contract. See also *Graham* v. *Theis*, 47 *Ga.* 479; *Simonton* v. *Liverpool Ins. Co.*, 51 *Ga.* 82; *Brunswick Co.* v. *Lamar*, 116 *Ga.* 1 (42 S. E. 366).

Counsel for the plaintiff in error cited the cases of *McLeod* v. *Hendry*, 126 *Ga.* 169 (54 S. E. 940), *Fontaine* v. *Baxley*, 90 *Ga.* 416 (17 S. E. 1015), and *Barnett Steamers* v. *Blackmar*, 53 *Ga.* 98, to sustain their contention that there was such part performance of the contract as would take the case out of the statute of frauds. In accord with our holding that the part performance must be such an act as is essential to the contract, it appears in

the *McLeod* case, supra, that the terms of the oral agreement required McLeod to surrender his rights under his bond for title; he had parted with something of value, upon the faith of Hendry's parol agreement. The evidence in the present case is not analogous to that in the *McLeod* case. The plaintiff was paid all that he contracted for during the time for which he was employed; and while it may have been expensive to him to move his family, their removal furnished no element of value to the defendants in error. In the *Fontaine* case, supra, it was one of the express stipulations of the contract that Fontaine should go to New York and there secure contracts for the furnishing of ties to be supplied by the plaintiffs. The very terms of the contract required him to go to New York and incur expense for the benefit of the plaintiffs. In the *Blackmar* case in 53 *Ga.*, supra, it was mutually agreed between the parties that a clerk was necessary, and the amount of his salary was agreed upon as essential to the execution of the contract between the parties; and upon this ground it was held that the employment and payment of the clerk amounted to such part performance as would prevent the defendant from setting up the statute of frauds. The first two cases are suits for damages for the breach of alleged contracts, but in both of them the part performance was something originally contemplated and agreed to as a part of the oral contract, and was essential to its existence and completeness.

So we conclude that neither the service of the plaintiff in error until January 5, nor the expense of the removal of his family, is such part performance of the contract as would take it out of the statute of frauds. We somewhat sympathize personally with the argument of counsel for the plaintiff in error, who follows his argument with this question: "Can it be said that under all the facts of this case, upon the facts showing bad faith and fraud, upon the part performance of the contract, upon the fact that the defendants used the services of petitioner for seven days of the month, for the salary of which this suit is brought, that all these facts and circumstances count for naught, and that, despite the justice of our cause, the law turns away her face?" And he concludes with the exclamation: "If so, then from our code should come the statement that for every wrong there is a remedy, for in this case there is none." We have no power over the practical

operation of the statute of frauds. *Ita lex scripta esl;* and we can only administer it. It can perhaps, however, be said that if in this case, as contended by plaintiff in error, "it is a fraud upon Bentley's rights, and yet the defendants summon, to protect them in this fraud, the very law that was formed to prevent it," nevertheless the statute has perhaps prevented even more frauds than it has caused.

4. The telegram introduced in the case confirms our opinion of the correctness of the ruling of the trial judge. When it is considered in connection with the plaintiff's testimony that there was no definite agreement as to the value of his services after January 1, it appears that the defendants in error had the right to discharge the plaintiff, as they did. The language used in the telegram was "permanent employment," and a contract for permanent employment has been held to be a contract to continue indefinitely, and terminable at any time by either of the parties. 20 Am. & Eng. Enc. Law (2d ed.), 16.     *Judgment affirmed.*