Albert Z. HODGE

v.

EVANS FINANCIAL
CORPORATION, Appellant.

No. 84–5224.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 11, 1985.

Decided Dec. 3, 1985.

Appeal from the United States District
Court for the District of Columbia (Civil
Action No. 81–02726).

Lee A. Rau, with whom Daniel A. Maser and Loren Kieve, Washington, D.C., were on brief, for appellant.

Albert Z. Hodge, pro se, with whom Gary Ethan Klein, Washington, D.C., was on brief, for appellee.

Before TAMM* and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

Dissenting opinion filed by Circuit Judge WALD.

MacKINNON, Senior Circuit Judge.

Following an adverse jury verdict involving a breach of an employment contract, Appellant Evans Financial Corporation ("Evans") seeks review of the district court's denial of its motions for directed verdict, judgment n.o.v. and new trial. Hodge, the Plaintiff-Appellee, prevailed on his claim that Evans breached their oral contract for permanent, long-term employment which Hodge claimed was terminable only for cause. The district court denied Evans' motion for a directed verdict and refused to instruct the jury on the Statute of Frauds (the "Statute") defense, and the jury awarded Hodge $175,000 in damages. Appellant's motion for judgment n.o.v. or new trial was also later denied. Evans alleges that the court's rulings constituted reversible error. Brief of Evans at 41. We conclude that the motion for a directed verdict should have been granted on the basis of the theory advanced by plaintiff's own testimony and reverse the district court with instructions to grant the motion for judgment n.o.v.

## I.

Appellee Albert Z. Hodge was in 1980 54 years of age and Assistant Counsel and Assistant Secretary of Mellon National Corporation and Mellon Bank of Pittsburgh. In that position he found there were "insurmountable ... obstacles" "to [Hodge's] genuinely ventur[ing] into executive management," and he "had a strong desire to leave the Mellon Bank" (Record Excerpts (RE) 90–91). He had moved part of his family to Pittsburgh in 1976 but desired to return to Washington where some of his children were in school and where his mother lived (RE 81–82). On April 10, 1980 and July 24, 1980, Hodge met in Washington, D.C. with Mr. Jon Tilley, President and Chief Operating Officer of Evans Financial Corporation, the Appellant. After their second meeting, Tilley orally offered Hodge the job of Vice President and General Counsel of Evans Financial Corporation; Hodge orally accepted about July 31, 1980, after Tilley had orally agreed to certain conditions orally presented by Hodge. Hodge moved from Pittsburgh to Washington, D.C. in September, 1980 and began working. But by May 7, 1981, Tilley was so dissatisfied with Hodge's work that he fired him. Hodge brought this action before the district court alleging diversity of citizenship and claimed that by firing him Tilley breached his employment contract (RE 12–15), which included, he claimed, an *oral promise* that the employment was to be "permanent," and according to his testimony that it was to last *until retirement at about age 65* (Trial Transcript (Tr.) 109–10, 114–15).

On April 15, 1982, after limited discovery, the trial court granted Evans summary judgment on the ground that "contracts of an indefinite nature are terminable at the will of either party." *Hodge v. Evans Financial Corp.*, No. 81–02726, slip op. at 6 (D.D.C. Apr. 6, 1982). This court, however, noting it was obviously possible for parties to construct an agreement that was not terminable at will and yet for an indefinite term, reversed the district court's order. *Hodge v. Evans Financial Corp.*, 707 F.2d 1566 (D.C.Cir.1983). The case was remanded and the district court was instructed to permit the plaintiff to prove that such an agreement existed, if he could.

* Judge Tamm had fully concurred in this opinion prior to his death.

The case was then tried to a jury, which, following the trial court's denial of defendant's motion for a directed verdict (Tr. 645–52), and its refusal to charge on the Statute of Frauds (Tr. 663), found for the plaintiff and awarded him $175,000 in damages. One ground relied upon for Evans' motion for a directed verdict was the Statute of Frauds and our decisions in *Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200 (D.D.C.1983), and *Gebhard v. GAF Corporation*, 59 F.R.D. 504 (D.D.C. 1973), were cited in support thereof. Evans' motion for judgment n.o.v. and new trial also relied upon the court's failure to instruct the jury on the Statute of Frauds defense. The motions were all denied (Tr. 645–52), and Evans now appeals from the resulting judgment.

## II.

### A.

The terms of the contract into which Hodge contends he entered with Evans are set out in Hodge's testimony. He testified that the contract of employment upon which he relies was entered into principally in *oral* conversation with Tilley, the President of Evans Financial Corporation. We set forth below Hodge's critical testimony concerning his oral contract negotiations with Tilley. First, Hodge expressed certain "conditions" with respect to the term of the contract and the terms of his employment:

Q [By Mr. Klein, Hodge's Attorney] What if any conditions did you present to Mr. Tilley at that time?

A [Hodge] I said, No. 1, the job must be *permanent*. Because of my age, I have a great fear about going back into the marketplace again. I want to be here *until I retire* [Tr. 109] [emphasis added].

[Hodge's later testimony, in response to his "intention as to how long [he] planned to continue to work" under the contract, indicated that by his testimony as to "permanent," and "until I retire," he meant retirement at about age 65. His specific testimony was that he "real-ly questioned if [he] was going to go much beyond 65." (Tr. 115) ].

Tilley's reply, according to Hodge's testimony:

He [Tilley] said *"I accept that [No. 1] condition."* (Tr. 110) (emphasis added). Hodge's brief indicates that this testimony around Tr. 109 "contained the specific framework of the contractual arrangement and other of its terms.... [These and the] *contractual provisions*, the words surrounding 'permanent' are [*not* ] merely suggestions or ideas." Brief of Hodge at 5 (emphasis added).

Hodge enumerated three other conditions, not here relevant (Tr. 110–11).

[Tilley] said "I accept [all] those [Hodge's] conditions and we have an agreement on all but one important item [money]."

(Tr. 111). At the end of the meeting with Hodge, Tilley "said":

"We have an agreement on everything except the one issue [money] and Bob Holtzman will be contacting you on that."

(Tr. 114). The money issue was subsequently worked out. On this term of the contract Hodge testified that his

... initial salary [was to] be at the *annual* rate of $47,500.... In addition, a minimum bonus of $6,000 is guaranteed for 1981 payable January, 1982.

(Tr. 230–31, 318) (emphasis added). The "bonus" feature of the "permanent" contract was confirmed in a letter from Tilley to Hodge dated July 31, 1980, which Hodge introduced into evidence. The letter stated:

Your position will be Vice President and General Counsel of Evans Financial Corp. This position is a Grade 63 and initial salary will be at the annual rate of $47,500. *In addition, a minimum bonus of $6,000 is guaranteed for 1981 (payable January, 1982).*

(Appendix of Hodge (App.) at 140–41) (emphasis added). Hodge accepted Tilley's offer (Tr. 119–20) to *start work September 2, 1980* (App. at 140). The contract Hodge

alleged and to which he testified was thus for a fixed period of about 11 years, since he was 54 when the employment contract was made (Tr. 114 (Hodge), App. 41), and he stated it was his intent under the contract to retire when he was about 65 (Tr. 115).

By any reasonable interpretation of Hodge's testimony, in which he expressed his interpretation of the "contractual provisions" as to its length, the agreement he entered into, as he understood it, was that his employment would be permanent until he retired at about 65, and that he would be paid *"annually"* a salary of $47,500 plus a bonus. The parties also specifically agreed, according to Hodge's testimony and evidence, that he would begin work on September 2, 1980 and would work until January, 1982, at which time he would be paid "a minimum bonus of $6,000 ... for 1981."

### B.

■ If the oral contract with Hodge was for "permanent," long-term employment until retirement at about age 65, as Hodge expressed it, it was unenforceable under the Statute of Frauds. *See* Brief of Evans at 34ff. We rely on Hodge's testimony and evidence as to the terms of the contract and find that Evans' claim has merit.

The District of Columbia Statute of Frauds, 28 D.C.Code § 3502 (1981), provides:

An action may not be brought ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

The theory of Hodge's complaint apparently is that the *oral* employment agreement alleged by him contemplated multi-year, long-term employment until retirement at about age 65. The critical terms of that alleged agreement, including duration, however, were not reduced to writing.

Hodge testified: "I really questioned if I was going to go much beyond 65." (Tr. 115). His testimony, upon which this opinion is based, was that *his employment was to be until retirement,* (Tr. 109 (Hodge), App. 36), *not until he died,* and that he intended to retire at 65 or perhaps later (Tr. 114–15 (Hodge) App. 42–43). This is the most probative testimony as to the fixed term of the contract, and this is Hodge's personal testimony. There is persuasive authority that such a contract is not enforceable under the District of Columbia Statute of Frauds. *See Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200, 204 (D.D.C.1983) (an oral promise of employment until retirement at age 65 is not enforceable unless reduced to writing); *Gebhard v. GAF Corp.*, 59 F.R.D. 504, 506 (D.D.C.1973) ("an oral contract obviously contemplating long-term employment is void under the Statute of Frauds.").

Appellee cites numerous cases that hold a contract that *could* be *fully performed* within one year is valid under the Statute. *See* Brief of Hodge at 18–21. We have no dispute with such decisions, but this is not such a case. Hodge makes several contentions that since he might have *died* within one year of the making of the contract, the contract could have been *fully performed* within a year and therefore does not fall under the Statute. That is true, however, only if the contract was "for life," which this contract was not. Such "for life" contracts traditionally do not fall within the Statute of Frauds. *See* Dissent at 2–4; 3 S. Williston, A Treatise on the Law of Contracts § 495, at 582 n. 17 (3d ed. 1960); *Snyder v. Hillegeist*, 246 F.2d 649 (D.C.Cir. 1957); *Cary v. U.S. Hoffman Mach. Corp.*, 148 F.Supp. 748, 751 (D.D.C.1957). The best evidence here, however, is Hodge's testimony that the contract was *not* "for life" but was a long-term contract, providing for permanent employment until retirement at about age 65 (Tr. 109–10, 114–15). Such a contract is recognized as *not* being *fully performed* if the contracting party dies within the first year. The fact that death terminates a contract for personal

services does not support interpreting every contract for personal services as a contract "for life."

■ In *Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200, 203–04, (D.D.C.1983), the court ruled that an employment contract until retirement at age 65 was void under the Statute of Frauds of the District of Columbia unless the essential terms of the contract were reduced to a writing. Hodge offers no writing that satisfies the requirement of the Statute of Frauds. The letter of July 31, 1980, which Hodge puts forward as a writing satisfying the Statute, does not mention the *duration* of the contract and so lacks an essential term to complete the contract. 572 F.Supp. at 204; *Penick v. Frank E. Basil, Inc. of Delaware*, 579 F.Supp. 160, 167 (D.D.C. 1984), *aff'd*, 744 F.2d 878 (D.C.Cir.1984); *William v. Morris*, 95 U.S. (5 Otto) 444, 456, 24 L.Ed. 360 (1877); *Marston v. Downing Co.*, 73 F.2d 94, 95 (5th Cir.1934). This letter thus cannot satisfy the writing requirement of the Statute. Hodge failed in his attempt to prove that the letter took the contract out of the Statute.

### C.

This court has previously recognized, moreover, the distinction between employment *for life* and employment *for a term* greater than one year under the Statute. *Farrow v. Cahill*, 663 F.2d 201, 207 n. 29 (D.C.Cir.1980). The termination of compliance with a contract for a term by the death of one of the parties would result, in this case, *not* in full and complete performance contemplated by the Statute of Frauds, but in a *defeasance* which would *not* take the case outside the Statute. Judge Bastian's opinion in *Coan v. Orsinger*, 265 F.2d 575, 577–79 (D.C.Cir.1959) so held for this court, citing an Eighth Circuit decision:

"* * * The statute [of frauds] looks to the performance and not the defeat of the contract, and a *defeasance* within a year would not constitute a performance according to the express intent of the

parties, that performance should continue longer than a year.["]

. . . .

*"Much of the confusion in considering the applicability of the statute apparently arises from failing to keep in mind the distinction between a contingency of such a nature as fulfills the obligation and one that defeats or prevents it from being performed. The one that depends upon the defeasance or matter of avoidance is within the statute, while the other is not."* [Emphasis supplied].

*Id.* at 577, *quoting Blue Valley Creamery Co. v. Consolidated Products Co.*, 81 F.2d 182, 185 (8th Cir.1936) (emphasis added). Our decision in *Coan* also cited the First Circuit to the same effect, stating, "The fact that the contract [by defeasance] may be terminated or further performance rendered impossible, does not take it out of the statute [of frauds]." 265 F.2d at 577, quoting *Union Car Advertising Co. v. Boston Elevated Ry. Co.*, 26 F.2d 755, 760 (1st Cir.1928). The fact that a *defeasance* might terminate the contract within a year does not take out of the Statute a contract that could not be *performed* within a year. *Street v. Maddux, Marshall, Moss & Mallory, Inc.*, 24 F.2d 617, 619 (D.C.Cir.1928). Hodge's contract contemplated, as he himself testified, a term of about 11 years extending to his expected retirement at around his 65th year. The contract was definitely for a long-term period. His death or some other contingency occurring within a year of the contract's making thus would not be a performance of the contract, but could only defeat it. No other reasonable interpretation of the contract is possible.

■ Hodge argues, and the dissent apparently agrees, that personal service contracts for an indefinite term fall outside the Statute, and that Hodge's contract was of this type. *See* 2 A. Corbin, Corbin on Contracts § 446, at 546–50 (1950 & Supp.1984); 3 S. Williston, *supra*, § 495, at 585 & n. 8. We disagree. Such a view of this contract simply ignores the fact that a contract may

be indefinite for many different reasons and not all of them should serve to take a contract outside the Statute. A contract "for life" is indefinite because a person can die at any time, and, as the term "for life" implies, the performance contracted for can be served within one year since the term is defined by the occurrence of a contingency which can happen within a year. However, a contract for a term of at least 11 years but no more than 15, for example, is also indefinite, but one could not say *this* sort of indefiniteness takes a contract outside the Statute, even though one can cite forever cases which say "indefinite term contracts fall outside the Statute." This is because the indefiniteness in the terms of a contract for at least 11 years but no more than 15 years, for example, is not of a sort that allows it to be fully performed within a year of its making. The touchstone of the Statute has always been whether the contract can be fully performed within a year of its making. Hodge's contract could not be. Its term extended at least until he was 65 but could extend somewhat longer. The fact that the parties stipulated that the contract was of no fixed term therefore does not take the contract outside of the Statute. *See* Dissent at 9–10. Just as this court decided, when this case was last before it, that the parties could make a contract that was indefinite in term but terminable only for cause, so we now hold that even if this contract is considered to be for an indefinite term it falls within the Statute, since by its terms it was not performable within one year of its making.

Hodge's contract, as he describes it, might be defeated by death or disability, but such an occurrence would be a defeasance and would *not* constitute *performance* within one year. The term of his contract, while not exact, was to be permanent until retirement at about age 65. It is not a reasonable interpretation of the testimony here to rule that a man employed at age 54, under what he testified was for permanent employment to serve until retirement (at what he expressly testified was to be not "much beyond 65"), is a contract contemplating performance by retirement before the first year is out. There is no question on this evidentiary record, on Hodge's testimony alone, that his employment contract was for a term greater than one year and that it was *not* for life.

█ Hodge argued that employment contracts "until retirement" are the same in effect as employment contracts for the period of an individual's *life* and therefore should fall outside the Statute. Retirement, however, differs substantially from death. Besides being a generally more welcome event, retirement may be more readily planned for. Parties may discuss retirement and plan an employment arrangement which contemplates that retirement will take place at a given time or later. This is what Hodge and Evans did, according to Hodge. The analogy between death, which can occur at any time to anybody, and retirement, therefore, breaks down. To the extent that Statute of Frauds cases in other jurisdictions conflate death and planned-for retirement at a date beyond a year of the contract's making, they are badly reasoned, and we are fortunate that the persuasive authority in this jurisdiction does not make this conflation.

In fact, the equivalence of "for life" and "until retirement" contracts is not so broad as the dissent takes it to be. The dissent's equation of "for life" contracts with "until retirement" contracts thus not only relies on a technical equation to the detriment of the policies of the Statute, it also misconstrues that equation itself. The entire sentence in *Williston on Contracts* on this point reads:

A promise of permanent personal performance is on a fair interpretation a promise of performance for life, and therefore not within the Statute; and *the same principle has been applied to promises in terms of unlimited duration made by or to a corporation when performance of the promise is by the nature thereof limited to the life of the corporation or the continuance of its business.*

3 S. Williston, *supra*, § 495, at 582–83 (footnotes omitted) (emphasis added). It is thus clear in context that the *sort* of permanent employment contracts which fall outside the Statute are those of *unlimited duration*. But Hodge's contract was not of that character. He and Evans contemplated a specific term, from the time the contract was made until Hodge retired at about age 65. His was not the typical, open-ended permanent employment contract that might last ten years or twenty or indeed less than one. Rather, the only reasonable interpretation of the contract is that Hodge and Evans agreed that Hodge would finish out his working career at Evans, and that term would last until Hodge was about 65. It was certainly *not* an open-ended contract of the sort described by Williston, one that on "a fair interpretation" is a contract that is limited by some contingency that the parties had reason to know could occur *infra annum*.

Even a technical statute like the Statute of Frauds deserves a reasonable interpretation, not a technical interpretation which violates its principles. It cannot be that a contract for a term of ten years, for example, to be fully performed when the employee retires at age 65, falls outside the Statute. For the term is clear: it calls for ten years of performance, and no contingency could make it less; it could not be *performed* within a year. That the term ends in retirement, or is defined by it, is irrelevant, so long as the term so defined is not such that it might run out within a year of the contract's making. To argue that because the ten year term ends in *retirement*, and cases say employment until retirement is like employment until death, and death might occur within a year, and therefore the contract is outside the Statute, is bad logic and cynical law. This line of reasoning depends on whether it is proper to analogize death with retirement, which in turn depends on the facts of the case. In this case it is absolutely clear that the analogy does not work: The term of Hodge's contract did not admit of some open-ended retirement arrangement in which he might retire, just as he might die,

after only a few months, and that such would constitute performance of the contract. This can be contrasted with a contract not to compete, for example, a typical open-ended, until-retirement contract that falls outside the Statute, *Spaulding v. Mayo*, 81 N.H. 85, 122 A. 899 (1923), where either death or retirement could occur at any time and still fulfil the contract. But if the term "until retirement," as the parties use it, denotes a particular term of several years, not a term of "unlimited duration," then the contract must, by any faithful interpretation, fall within the Statute. Death or retirement within a year would have defeated, not caused the full performance, of Hodge's contract.

This court recognized the important formal distinction between defeasance and performance applied here in the law of the Statute in *Coan v. Orsinger, supra*. Since our decision in *Coan* was rendered in 1959, *i.e.*, before 1971, when this court had plenary jurisdiction in the District of Columbia, it is presently still binding precedent in all courts of the District of Columbia. This result is dictated by the decision of the District of Columbia Court of Appeals in *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. App.1971).

> With respect to decisions of the United States Court of Appeals rendered prior to February 1, 1971, we recognize that they, like the decisions of this court, constitute the case law of the District of Columbia. As a matter of internal policy, we have adopted the rule that no division of this court will overrule a prior decision of this court or refuse to follow a decision of the United States Court of Appeals rendered prior to February 1, 1971, and that such result can only be accomplished by this court en banc.

*Id.* (footnote omitted). In a diversity case this court is bound to apply the precedent of *Coan*, and prediction as to what might happen in the future in the courts of the District of Columbia is not necessary or in order. Thus, while Hodge cites many authorities concerning employment *for life*, *see also* Dissent at 805–806, to establish

the conventional point of law that "for life" contracts fall outside the Statute, they do not apply here.

 It is a more relevant and equally conventional point of law that a contract is within the Statute when it appears from the terms of the contract that the parties contemplated a permanent arrangement necessarily extending beyond a year, or that they did not contract for full performance within a year. *See, e.g., Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12 (1957); *Zupan v. Blumberg,* 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957); *Massion v. Mt. Sinai Congregation,* 40 Wyo. 297, 276 P. 930 (1929). We are not inclined to ignore this sensible rule. This rule clearly applies to cases such as this one where the retirement referred to in the oral contract, unlike death, is not a contingency that may occur at any time and constitute performance of a contract for "permanent" employment by its own terms within a year, but a planned-for event to take place only after a fixed term of years agreed to by the parties. Obviously, if retirement is contemplated by the parties to occur only after a fixed term of years, the contemplated permanent contract is "not to be performed" within one year of its making, and if not reduced to a writing, the contract is void. It is clear that the instant contract, as contemplated by the parties *according to Hodge's testimony,* could not possibly have been *fully performed* within a year of its making.

The dissent argues that employment "for life" and "until retirement" are both for "permanent" employment and thus fall outside the Statute of Frauds. It then attributes this view to the jury. As the district court's instructions to the jury indicate, however, the word "permanent" can have several different meanings (Tr. 665). The dissent's reasoning depends on giving that word one particular reading, namely, "for life," or at any rate *not* for the fixed term of years between the time of Hodge's initial employment with Evans and the time that Hodge testified he intended to retire, or even, at a minimum, at least through the year 1981, after which the $6,000 bonus was to be paid in January 1982. This was

provided for in the only written evidence of any part of the contract into which Hodge entered. The district court does use the word "permanent" in its instructions to the jury, but only to distinguish between two particular kinds of "permanent" employment: that which is terminable at will, and that which is terminable only for cause. *Id.* It is never used in any way that sheds light on the Statute of Frauds issue.

The ambiguity of the meaning of "permanence" can be used to put the employee-plaintiff at an unfair advantage in cases like this one. The California Court of Appeals ruled in a very similar case that the sort of argument Hodge would have had to make to win his case would be an attempt "to have it both ways." *Newfield v. Insurance Co. of the West,* 156 Cal.App.3d 440, 446, 203 Cal.Rptr. 9, 13 (1984). The court in *Newfield* stated:

> Either [the plaintiff's] employment relationship was a contract in which both parties had equal rights to terminate at will (in which case it was not a violation of the statute of frauds), or it was a contract where the employer did not have the right to terminate at will, and there was a reasonable expectation of employment for more than one year (in which case the statute of frauds does apply, barring this action).

What the jury in Hodge's case had the opportunity to decide is whether the contract was terminable at will, the usual business understanding of the term "permanent employment," or whether the employment was "permanent" in the sense of terminable only for cause. This is absolutely clear from a reading of the record: The only "permanence" issue considered was whether Hodge could be dismissed only for cause (Tr. 665, 621–23). The jury was *never* given the opportunity to consider whether the contract contemplated employment for more than one year from the time it was made. This is the issue under the Statute of Frauds. Evidence relevant to this factual issue is in the record, and the jury was not instructed on it. Thus it

could not make any determination as to the contemplated term of the contract. This court can, however, examine the evidence bearing on this issue which is not in dispute, particularly Hodge's testimony and evidence, and find it determinative of his claim. A contract that obligated Evans to employ Hodge until retirement and allowed Evans to dismiss him only for cause, yet permitted Hodge to leave at any time without breaching any obligations of the contract, might be outside the Statute. No reasonable jury, on this record, however, could have found that these were the terms of Hodge's and Evans' agreement. In this court's last decision in this case, we decided, in effect, that a plaintiff *could* have it both ways; we did *not* decide, however, that he did not have to prove that the contract negotiations had resulted in so strange and, for the plaintiff, so fortunate a result. Hodge's testimony alone, far from supporting such an interpretation of the contract, makes clear instead that a much more conventional agreement was reached, *i.e.*, an agreement for multi-year employment that falls within the Statute.

### D.

 Hodge's argument, moreover, that partial performance takes his contract out of the Statute is without merit. It is well-settled that in an action at law partial performance does not take a contract out of the Statute. *Landlow v. Georgetown-Inland West Corp.*, 454 A.2d 310, 314 n. 4 (D.C.App.1982); *Tauber v. Jacobson*, 293 A.2d 861, 866 (D.C.App.1972); *Hackney v. Morelite Construction Co.*, 418 A.2d 1062, 1066 (D.C.App.1980); *Rowland v. Ewell*, 174 So.2d 78 (Fla.App.1965); *Poole v. Johns-Manville Products Corp.*, 210 Miss. 528, 49 So.2d 891 (1951); *see also* 6 A.L. R.2d 1053, 1074 (1949) (cases collected). Hodge invokes the equitable doctrine that estops the assertion of the Statute as a defense where it would work a fraud on the plaintiff. Brief of Hodge at 21. This, however, is not such a case. Hodge's resignation from his position in Pittsburgh and his expenses in moving to Washington were not partial performance of the con-

tract, but preliminary to performance. *Hudson v. Venture Industries, Inc.*, 243 Ga. 116, 252 S.E.2d 606, 608 (1979); *Bentley v. Smith*, 3 Ga.App. 242, 59 S.E. 720 (1907); *Marston v. Downing Co., Inc.*, 73 F.2d 94, 96 (5th Cir.1934). As to his employment from September 2, 1980 to May 7, 1981, Hodge does not allege he was not properly compensated at the contract rate for this period. Had he not been compensated, he could collect under *quantum meruit*. *See Lee v. Jenkins Bros.*, 268 F.2d 357, 373 (2d Cir.), *cert. denied*, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959). Thus Hodge can only be seeking damages based on an alleged breach of the executory portion of the contract, as indeed is clear from his calculation of damages (Tr. 189–90, 196–202). It is well-established, however, that an action barred by the Statute may not be maintained on the basis of partial performance to recover damages based on the nonperformance of the executory portion of the contract. *Brockman v. Lane*, 103 Cal.App.2d 802, 230 P.2d 369 (1951); *Doughty v. Giffordline Chemical Co.*, 96 R.I. 223, 190 A.2d 480 (1963). *See also* 6 A.L.R.2d 1053, 1083 (1949) (cases collected). The law of the District of Columbia on this point is clear: "[A]s a general rule, nothing short of full performance will take a contract not to be performed within one year from within the statute." *Easter v. Kass-Berger, Inc.*, 121 A.2d 868, 871 (D.C.App.1956).

### E.

 In addition to Hodge's oral testimony cited above, the record makes it unquestionably clear that the *defendant's* evidence showed that the contract was barred by the Statute of Frauds. The only writing introduced to support the alleged contract is the letter of Jon Tilley to Hodge dated July 31, 1980 referred to above. This letter states "a minimum bonus of $6,000 is guaranteed for 1981 (payable January, 1982)." Plaintiff's Exhibit 4 (App. 161). The *only* reasonable interpretation of this language, with the annual bonus *payment* "for 1981" to be made in "January, 1982" some *17*

*months* away, is that in July 1980, when the contract was made, Tilley and Hodge both interpreted their agreement to provide that Hodge was to work at least more than one year, *i.e.*, through 1981—that is for 17 months at the least. Since the date the contract was made as indicated by this writing was July 31, 1980, and Hodge began work thereunder on September 2, 1980, the contract, insofar as it contemplated work at least through the year 1981, could not possibly have been fully performed within one year from the time the contract was made. *See Thoma v. Wolverine World Wide Inc.*, 352 F.Supp. 580, 583–84 (W.D.Pa.1972); *see also Price v. Press Pub. Co.*, 117 A.D. 854, 103 N.Y.S. 296 (1907); *Paschall v. Anderson*, 127 Tex. 251, 91 S.W.2d 1050 (1936).

In *Lee v. Jenkins Bros.*, 268 F.2d 357 (2d Cir.), *cert. denied*, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959), a corporation was alleged to have made an oral contract with an employee to pay a certain pension when the employee reached age 60, the employee being 30 at the time. The court held that because this performance was not to begin until more than one year after the date of the making of the contract, it was within the operation of the Connecticut Statute of Frauds. Just as in *Lee* the pension was to be paid in return for the term of years working, so Hodge's contract, as he testified, provided for his employment for the year 1981 before the payment of the bonus. With such performance extending beyond the year, the payment of the bonus was fixed to begin at a specified time more than a year in the future, "January, 1982," and Hodge's death or retirement would defeat, not perform, the contract. *See Lee*, 268 F.2d at 373. Thus, even if the permanent, until retirement at about age 65 (Tr. 109–10, 114–15) term of the contract would not bring it within the Statute of Frauds, the agreement providing for Hodge to work through 1981 and guaranteeing payment of an annual bonus at the end of the year would bring the contract within the Statute. This feature of the contract indicates that it was the intent of the parties, as

expressed in Hodge's testimony, that their contract provided at a minimum that Hodge would work through 1981 and be paid a bonus of at least $6,000 in January 1982 (Tr. 109–10, 114–15). On this ground alone the contract is clearly within the Statute and is void.

## III.

According to Hodge's understanding of the contract, as he testified, Evans had to employ him until Hodge retired at about age 65 or slightly thereafter and could dismiss him only for good cause. No reasonable jury could have found that this highly unusual arrangement imposed no obligations on Hodge in return. Indeed, Hodge's testimony as to the generous contract he reached with Tilley, whom he characterized as a rather ruthless businessman, is almost, if not quite, "so patently incredible that a jury should not have been allowed to accept it." *Lee*, 268 F.2d at 374 (Hand, J., dissenting). Moreover, this case is a classic one for invoking the Statute. Not only is the contract Hodge alleges extremely unusual, almost inexplicable as a matter of business practice, Tilley, the only other witness to the negotiations which brought about this anomoly, is dead and thus was unable to testify at the trial. In such situation, the danger of fraud, against which the Statute is supposed to protect, is great. Hodge, moreover, as a practicing attorney, had every reason to know about the Statute of Frauds. *Lee*, 268 F.2d at 372 ("Both parties realized, or should have realized, that the nature of the contract would suggest that the agreement be put in writing."). The jury, not instructed on the issue of the term of the contract, never addressed the issues raised by the Statute of Frauds defense. This court, however, may do so, and finds that the contract, as Hodge describes it in his testimony, is a multi-year, long-term employment contract for a reasonably fixed period extending well beyond the one year period and thus falls within the Statute.

The purpose of the Statute is, in part, to insure equality and justice between the par-

ties. *See Lockwood v. Smigel,* 18 Cal. App.3d 800, 803, 96 Cal.Rptr. 289, 291 (1971). The Statute represents a legislative decision that before the state will employ its coercive apparatus to enforce long-term contracts that impose weighty obligations on private parties, it will require more than mere oral evidence, but a written contract. The formal rule of "within one year of the making thereof" captures as well as any formal rule may this class of contracts the enforcement of which puts a duty on the state to make certain that the parties did in fact enter into the agreement which they now seek to use the power of the state to enforce. *See* 2 A. Corbin, *supra,* § 275, at 3.

Upon examination of the record evidence we conclude as a matter of law that a reasonable jury could only have found that the contract was not performable within a year of its making and was therefore barred by the Statute of Frauds. With Hodge's testimony on this point being clear and determinative, we see no reason to remand the case for a second time. The district court clearly erred in denying defendant's motion for a directed verdict and in not granting the motion for judgment n.o.v. Hodge's claim is precluded by his own evidence, and he is bound thereby. We therefore reverse with instructions to grant the motion for judgment n.o.v.

Appellant also raises other grounds for reversal of the district court's denial of its motion for judgment n.o.v. or new trial. We need not and do not reach those issues because we reverse this case on the Statute of Frauds issue.

*Judgment accordingly.*

WALD, Circuit Judge, dissenting.

In 1983, this court concluded that Hodge was entitled to an opportunity to demonstrate that Jon Tilley, the president of Evans Financial Corporation, orally promised him permanent employment with Evans if he would give up his job in Pittsburgh and move to Washington. Under such a permanent employment contract, we concluded, Hodge could only be fired for a justifiable reason. *See Hodge v. Evans Financial Corp.,* 707 F.2d 1566, 1567–70 (D.C.Cir. 1983). In doing so, we reversed the district court's ruling that all employment contracts of an indefinite nature are terminable at will as a matter of law. *See id.* On remand, a jury determined that Tilley had indeed promised Hodge permanent employment, and that Hodge had not been fired for cause. The majority now vacates the jury's verdict on the ground that Hodge's oral contract for permanent or lifetime employment is unenforceable under the local statute of frauds. The majority is wrong.

The District of Columbia statute of frauds provides, in relevant part, that:

An action may not be brought ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

D.C.Code § 28–3502. Despite its sweeping terms, the one-year provision of the statute has long been construed narrowly and literally. Under the prevailing interpretation, the enforceability of a contract under the statute does *not* depend on the actual course of subsequent events or on the expectations of the parties. Instead, the statute applies *only* to those contracts whose performance could not possibly or conceivably be completed within one year. The statute of frauds is thus inapplicable if, at the time the contract is formed, *any* contingent event could complete the terms of the contract within one year. *See, e.g.,* Restatement (Second) of Contracts § 130 comment a (1979); 2 Corbin on Contracts § 445, at 542–43 (1950 & Supp.1984) ("It makes no difference how improbable it is that the condition will occur within a year; if there is *any* possibility that it may so happen, the statutory provision is not applicable.") (emphasis added); 3 Williston on Contracts § 495, at 577–83 (3d ed. 1960) (same).

In *Snyder v. Hillegeist,* 246 F.2d 649 (D.C.Cir.1957), this court *explicitly* ruled that the local statute of frauds should be so construed, observing that "decided cases and authorities too numerous to cite and too well known for discussion have held that an agreement which is *capable, possible or susceptible* of performance within one year is not within the reach of the statute." *Id.* at 651 (Burger, J.) (emphasis added); *see also Coan v. Orsinger,* 265 F.2d 575, 578 (D.C.Cir.1959) ("If the contingency which fulfills and completes the terms of the contract happens or *could possibly happen* within a year, the contract is not within the statute.") (emphasis added). At the time of the *Snyder* case, of course, this court was the final authority on District of Columbia law. In the absence of intervening changes in local law, we must therefore respect its construction of the statute as any diversity court must respect the decisions of the highest relevant state court. *See Steorts v. American Airlines, Inc.,* 647 F.2d 194, 196 (D.C.Cir. 1981); *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

Hodge argues that a permanent or lifetime employment contract does not fall within the statute as interpreted by *Snyder* because it is capable of full performance within one year if Hodge were to die within the period. Hodge's view of the statute's applicability to lifetime or permanent employment contracts has, in fact, been accepted by an overwhelming majority of courts and commentators. *See* Restate-ment (Second) of Contracts § 130 illustration 2 (1979) ("A promises to work for B, and B promises to employ A during A's life at a stated salary. The promises are not within the one-year provision of the Statute, since A's life may terminate within one year."); Restatement (First) of Contracts § 198 illustration 2 (1930) (same); Restatement (Second) of Agency § 414 comment a (1958) (same); 2 Corbin on Contracts § 446, at 549 & n. 35 (1950 & Supp.1984) ("A contract for 'permanent' employment is not within the one-year clause for the reason that such a contract will be fully performed, according to its terms, upon the death of the employee."); E. Farnsworth, *Contracts* § 6.4, at 394 (1982) (same); 3 Williston on Contracts § 495, at 579–81 & n. 8 (3d ed. 1960) (same); 72 Am.Jur.2d *Statute of Frauds* § 42 (1974 & Supp.1984) ("It is a well-settled rule that a contract ... to employ one for the duration of his life [or] a contract to give one 'permanent' employment ... is not within [the statute] for the reason that contracts of this description are deemed possible of performance within one year from their formation, since, for example, the employee may die within that period.") (footnotes omitted).

Although the local courts have not directly spoken on the applicability of the statute to permanent employment contracts, the vast majority of the state courts faced with this issue have squarely and unequivocally held that contracts such as Hodge's fall outside the statute.[1] In *Cooper v. Saunders-Hunt,* 365 A.2d 626, 629 (D.C.1976),

---

1. *See, e.g., Kitsos v. Mobile Gas Serv. Corp.,* 404 So.2d 40 (Ala.1981) (permanent or lifetime employment); *Buechner v. Rose,* 538 P.2d 117 (Colo.App.1975); *Spindel v. National Homes Corp.,* 110 Ga.App. 12, 137 S.E.2d 724 (1964) (indefinite or permanent employment); *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982) (permanent employment); *Kiyose v. Trustees of Indiana Univ.,* 166 Ind.App. 34, 333 N.E.2d 886 (1975) (permanent or lifetime employment); *Stracter v. Walnut Grove Prods.,* 188 N.W.2d 305 (Iowa 1971) (indefinite, permanent or lifetime employment); *Pierson v. Kingman Milling Co.,* 91 Kan. 775, 139 P. 394 (1914) (lifetime employment); *Carnig v. Carr,* 167 Mass. 544, 46 N.E. 117 (1899) (permanent employment); *Rowe v. Noren Pattern & Foundry Co.,* 91 Mich.App. 254, 283 N.W.2d 713 (1979) (permanent employment); *Bussard v. College of St. Thomas Inc.,* 294 Minn. 215, 200 N.W.2d 155 (1972) (permanent employment); *Slabon v. St. Louis Car Co.,* 102 S.W.2d 939 (Mo.1937) (permanent or lifetime employment); Weber v. Perry, 201 S.C. 8, 21 S.E.2d 193 (1942) (permanent or indefinite employment); *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773 (Tex.1974) (permanent employment); *Cooper v. Vitraco, Inc.,* 320 F.Supp. 239 (D.V.I.1970) (Virgin Islands law) (permanent or lifetime employment); *Silverman v. Bernot,* 218 Va. 650, 239 S.E.2d 118 (1977) (lifetime employment); *Rua v. Bowyer Smokeless Coal Co.,* 84 W.Va. 47, 99 S.E. 213 (1919); *Dow v. Shoe Corp. of Am.,* 276 F.2d 165 (7th Cir.1960) (Wisconsin law) (permanent or lifetime employment).

moreover, the highest local court adhered to the conventional, narrow interpretation of the one-year provision by concluding that an indefinite oral partnership agreement does not fall within the statute. *See id.* ("An oral partnership agreement [for an indefinite period of time] would not run afoul of the Statute of Frauds since *no term of years was ever fixed and therefore it was capable of performance within one year.*") (emphasis added) (citing *Snyder*, 246 F.2d at 651). This court has also recognized, albeit in dicta, that employment contracts of an uncertain or permanent duration are excluded from the statute. *See Farrow v. Cahill*, 663 F.2d 201, 207 n. 29 (D.C.Cir.1980) ("[A] promise to serve as an employee as long as the employee lives ... is ... clearly outside the statute.") (discussing Williston). In sum, the settled view is that Hodge's permanent employment contract is not barred by the statute.

The majority nonetheless insists that Hodge's argument is inconsistent with "precedent," relying on dicta in two federal district court cases suggesting that oral long-term employment contracts are unenforceable under the statute. *See Prouty v. National R.R. Passenger Corp.*, 572 F.Supp. 200, 204 (D.D.C.1983); *Gebhard v. GAF Corp.*, 59 F.R.D. 504, 506 (D.D.C. 1973). Neither of those cases, however, mentioned the conventional view that permanent employment contracts are outside the statute, and neither attempted to predict how local courts would treat such a contract in light of *Snyder* and *Cooper*. Thus the majority points to no reliable authority or suggestion that District of Columbia courts would not follow the conventional interpretation of the statute of frauds. *Snyder* and *Cooper*, in turn, strongly indicate that local courts would embrace the prevailing view and accept Hodge's argument. In the absence of con-

trary indications in local law, this court has consistently looked to established authority for guidance on the statute of frauds. *Cf. Farrow*, 663 F.2d at 208–10 (consulting Williston and the Restatement to determine whether a particular writing satisfies the statute). We should do so here.

While the majority next concedes the "conventional point of law" that open-ended or lifetime employment contracts fall outside the statute, it simply denies that Hodge ever had such a contract. *See* Maj.Op. at p. 801. Instead, the majority reasons, Hodge's agreement with Evans must be interpreted as a contract for a fixed term of eleven years because Hodge expected to retire at approximately age 65. Under the conventional view of the statute, an oral employment contract for a *stated, definite* term of years exceeding one year is unenforceable on the rationale that the employee's possible death within one year would "defeat" rather than "complete" the *express* terms of the contract.[2] The majority's creative transformation of Hodge's permanent employment contract into a contract for eleven years allows it to apply the statute to bar Hodge's claim despite *Snyder* and *Cooper*. The majority's *entire* argument thus turns on its assertion that the parties "really" agreed to an employment contract for a fixed term of years. In my view, this contrivance lacks even plausible support in either the record or the law.

To begin with, the majority has simply crafted this eleven year contract out of thin air. Hodge unequivocally alleged a contract for permanent employment, not a contract for eleven years or any other stated period of time. *See* Complaint ¶ 6, Joint Appendix at 13; *Hodge*, 707 F.2d at 1567 ("The Complaint ... stated that Tilley promised Hodge that his employment

---

**2.** In *Easter v. Kass-Berger, Inc.*, 121 A.2d 868, 871 (D.C.1956), for example, a local trial court held that an employment contract for an *express* term of two years fell within the statute. This holding is entirely consistent with the conventional interpretation accepted by local courts. *See Cooper*, 365 A.2d at 629 (holding that contracts for an *indefinite* period are excluded from

the statute's coverage); *see also Farrow*, 663 F.2d at 207 n. 29 (noting this distinction in the conventional view); *cf. Coan v. Orsinger*, 265 F.2d 575, 576–77 (D.C.Cir.1959) (concluding that contingencies that defeat a contract rather than complete its performance are within the statute). *See generally* 2 Corbin on Contracts § 447 (1950 & Supp.1984).

would be permanent."). While Hodge indeed testified that he contemplated retirement at some point in the future and that he intended to remain with Evans for the remainder of his working life, nothing in that testimony suggests (as the majority now "holds") that he and Tilley specifically agreed to a definite, *expressly stated* term of years. The record nowhere indicates, for example, that Hodge told Tilley that he would only accept a job with Evans if Tilley promised him employment for eleven years or that Tilley insisted on or even mentioned a stated, definite term of employment for eleven years or any other period.

Crucially, Evans has not at any point in this lawsuit argued or even hinted at the possibility that Hodge and Tilley entered into a contract for eleven years or any other fixed period of time. To the contrary, Evans has consistently argued that Hodge must be deemed an at-will employee precisely because he was *not* promised employment for *"any* fixed period of time." Evans' Brief at 7 (emphasis added); *see also id.* at 13, 15–16; *Hodge,* 707 F.2d at 1566–67 & n. 3. At trial, for example, Evans' counsel elicited the following testimony from Hodge:

> Question: Mr. Hodge, am I correct that you received no promise from any-

one at Evans of employment for any specified period of time?

> Answer: Not a specific date or number of years, no.

> Question: As a matter of fact, not any specific period of time; not one day, not 10 days, not 20 days, not 60 days, not 90 days, not 10 years, no specific period of time?

> Answer: No.

Transcript, Record ("R.") Item 85, at 203–04. In various pretrial memoranda, moreover, the parties definitely *stipulated* that Hodge and Tilley had not entered into a contract for any fixed period of time. *See* Evans' Pretrial Brief, R. Item 54, at ¶¶ 32–33; Hodge's Pretrial Brief, R. Item 55, at 3.

Given the parties' stipulation that Hodge did not contract for *any* fixed period of employment, I simply cannot understand how the majority can declare that Hodge and Tilley in fact agreed upon "a fixed term of years," and that "no reasonable jury" could have found otherwise. *See* Maj.Op. at pp. 801–02.[3] Instead, it seems to me abundantly clear that Hodge has alleged "the typical, open-ended permanent employment contract that might last ten years or twenty or indeed less than one," Maj.Op. at p. 800—precisely the sort

---

3. Factual disputes concerning the applicability of the statute of frauds are normally submitted for jury resolution. *See* 72 Am.Jur.2d *Statute of Frauds* § 605, at 245 (1974); *cf. Easter v. Kass-Berger, Inc.,* 121 A.2d 868 (D.C.1956). At the very most, then, the majority's fixed term contract theory might create a factual issue (*i.e.,* whether Hodge entered into a contract for a definite, fixed period of time) that the district court should have submitted to the jury. I cannot even speculate on how the majority can conclude that the evidence is such that *no* reasonable jury could have found that Hodge entered into an indefinite, open-ended contract.

In this particular case, moreover, the district court's refusal to instruct the jury on the statute of frauds should be sustained for two reasons. First, the district court could not have submitted *any* factual issue to the jury under the majority's theory of this case because Hodge testified, and the parties *stipulated,* that he was not promised employment for any fixed period of time. Second, Evans' proposed jury instruction concerning the statute was clearly wrong as a matter of law. That proposed instruction read as follows:

> Under District of Columbia law, any alleged agreement that is not to be performed within one year must be in writing. The evidence is undisputed that there is nothing in writing signed by Evans Financial Corporation that evidences any agreement by Evans to retain plaintiff Hodge for any period of time. Accordingly, plaintiff has failed to satisfy the requirements of D.C. law and I instruct you that your verdict must be for Evans Financial Company.

Evans' Pretrial Brief, R. Item 54, at 42. Thus, even if Evans could somehow escape its pretrial stipulation, its failure to raise the theory advanced by the majority (or any factual issue for the jury) before the district court should prevent it from obtaining relief in this court under any fixed term contract theory. *See* Fed.R.Civ.P. 51; *see generally Black v. Stephens,* 662 F.2d 181, 184 (3rd Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1981); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2559, at 646–48 (1971 & Supp.1985).

of contract that falls outside the statute under the conventional view. If anything, then, the record completely contradicts the majority's attempt to apply the statute on the theory that Hodge and Tilley agreed upon an employment contract for a fixed term of years.

Similarly, the bare fact that Hodge expected to retire at some point provides no legal basis for the majority's assertion that his contract could not possibly be performed within one year. *All* employment contracts for permanent, lifetime or indefinite duration undoubtedly contemplate retirement; such contracts certainly do not, as a matter of law, mean that employees are bound to work until the moment they drop dead. Hodge's permanent employment contract with Evans could therefore be fully performed, according to terms, upon Hodge's retirement *or* upon his death. Under the conventional view of the statute, the latter possibility is sufficient to take the contract out of the statute. *See, e.g.*, 2 Corbin on Contracts § 454 (contracts susceptible to alternative performances are outside the statute if any one of the alternatives could possibly be performed within one year); 3 Williston on Contracts § 498 (same). That Hodge fully expected to retire before he died is completely irrelevant to this case so long as the contract was legally susceptible of performance within one year. The applicability of the statute of frauds simply does not depend on the expectations of the parties.

Thus the majority's repeated insistence that the statute bars Hodge's contract because the parties expected that Hodge would retire at some point is starkly inconsistent with the conventional view. "Under the prevailing interpretation, the enforceability of a contract under the one-year pro-

vision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities." Restatement (Second) of Contracts § 130 comment a (1979). As the Supreme Court has explained in a similar context:

> The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no *stipulation* which in terms, or by reasonable inference, *required* that result. The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, *required* that it should not be performed within one year.

*Warner v. Texas & Pacific Rwy.*, 164 U.S. 418, 434, 17 S.Ct. 147, 153, 41 L.Ed. 495 (1896) (emphasis added); *see also Snyder*, 246 F.2d at 651; *Cooper*, 365 A.2d at 629; *supra* pp. 804–05. In the absence of a specifically agreed upon and stated term of years, the parties' expectation that Hodge would work until retirement does not bring his contract within the statute.

In the face of these settled principles, the majority points to absolutely no authority for its unprecedented assertion that the statute of frauds applies to permanent or indefinite employment contracts contemplating retirement, but not to ordinary service contracts for "life." The cases purportedly standing for this proposition all involve contracts for *expressly stated definite terms* exceeding one year[4] and are thus irrelevant here. *See supra* note 2. The majority most assuredly does not point to *any* indication in local law or elsewhere

**4.** *See Coan v. Orsinger*, 265 F.2d 575 (D.C.Cir. 1959) (three-year employment contract); *Blue Valley Creamery Co. v. Consolidated Prods. Co.*, 81 F.2d 182 (8th Cir.1936) (five-year purchasing agreement); *Union Car Advertising Co. v. Boston Elevated Ry. Co.*, 26 F.2d 755 (1st Cir.1928) (fifteen-year rental agreement); *Thoma v. Wolverine World Wide, Inc.*, 352 F.Supp. 580 (W.D. Pa.1972) (one-year employment contract commencing several weeks after the contract was

agreed to). The *Farrow* case, moreover, merely recognized the distinction between express contracts for definite terms and lifetime contracts under the statute. It did not distinguish "permanent" from "lifetime" employment contracts; if anything, it recognized that employment contracts for an indefinite period of time are excluded from the statute. *See Farrow*, 663 F.2d at 207 n. 29.

that a permanent employment contract should be construed as a contract for an expressly stated, fixed term of years by virtue of an employee's expectation that he or she will retire at some point. While courts and commentators have often discussed the applicability of the statute to long-term permanent employment contracts, no court or commentator has *ever* suggested that such contracts "really" constitute agreements to work for a fixed term of years because the parties expect the employee to retire at some point or that the possibility of the employee's death within one year would "defeat" rather than "complete" such a contract. To the contrary, courts and commentators have consistently accepted the view that indefinite permanent employment contracts such as Hodge's fall outside the statute because they are capable of full performance within one year. *See, e.g.*, 2 Corbin on Contracts § 446, at 549 (Permanent employment contracts fall outside the statute because "[t]he word 'permanent' has, in this connection, no more extended meaning than 'for life.'"); 3 Williston on Contracts § 495, at 582 ("A promise for permanent personal performance is on a fair interpretation a promise for life, and therefore not within the statute."). *See also supra* note 1 (collecting cases); *supra* p. 805 (collecting commentators).

The majority finally asserts that Tilley's July 31st letter to Hodge confirming salary and benefit matters brings Hodge's contract within the statute because it established a fixed date in the future, more than a year from the making of a contract, for the payment of Hodge's first year bonus. That letter states in relevant part:

I am pleased to welcome you to Evans. I thought it would be useful to confirm in writing a number of items.

Your position will be Vice President and General Counsel of Evans Financial Corp. This position is a Grade 63 and initial salary will be at the annual rate of $47,500. In addition, a minimum bonus of $6000 is guaranteed for 1981 (payable

January, 1982). In the event actual bonus exceeds this amount, you will receive the higher amount. I have enclosed a summary of our current bonus plans with this letter....

Letter from Jon Tilley to Albert Hodge 1 (July 31, 1980), R. Excerpts at 161. Because his first bonus was payable in January of 1982, the majority evidently believes, Hodge's contract at least "contemplated" work until that date and therefore could not be performed within one year. *See* Maj.Op. at pp. 802–03.

Yet Tilley's letter obviously constitutes nothing more than a routine confirmation of a particular contract term—Hodge's salary scale—that is irrelevant to whether Hodge was promised permanent employment. It does not address the duration of Hodge's employment and it certainly does not purport to establish an employment contract for seventeen months or any other fixed period of time. No party to this case has ever advanced any such argument, and no court has ever taken the position that the existence of an escalating future salary schedule demonstrates that a permanent employment contract cannot possibly be performed within one year. Indeed, courts have specifically and consistently held that the presence of bonus or salary terms payable after one year does not bring a long-term indefinite employment contract within the statute. *See, e.g., White Lightning Co. v. Wolfson*, 68 Cal.2d 336, 66 Cal.Rptr. 697, 438 P.2d 345 (1968) (Tobriner, J.); *Murphy v. Buschman-Jennings, Inc.*, 382 S.W.2d 29 (Mo.App.1964); *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974). At most, Tilley's letter indicates only that Evans fully *expected* Hodge to work through January of 1982—an expectation that does not bring a permanent employment contract within the statute. If the contract at issue here was merely an oral agreement to pay Hodge a sum of money after seventeen months, the statute of frauds might well apply under the cases cited by the majority.[5] Try as it may, however, the majority

---

**5.** *See Lee v. Jenkins Bros.*, 268 F.2d 357 (2d Cir.1959) (oral promise to pay a pension after

simply cannot erase the fact that the contract alleged and proven at trial by Hodge was an agreement for long-term permanent employment.

In my view, then, no theory advanced by the majority can overcome either the plain fact that Hodge alleged and proved that Evans promised him indefinite permanent employment or the settled legal principle that such contracts are not barred by the statute of frauds. I recognize that the conventional view of the statute represents a somewhat "legalistic" triumph of form over substance. Yet the statute of frauds itself is widely understood as a formal legal device that shields promise breakers from the consequences of otherwise enforceable agreements. *See, e.g., Farrow,* 663 F.2d at 207 n. 29; *Hackney v. Morelite Constr.,* 418 A.2d 1062, 1065–67 (D.C.1980); 2 Corbin on Contracts § 444 (1950 & Supp. 1984). The conventional, narrowing interpretation overwhelmingly adopted by courts and commentators is designed to mollify the often harsh and unintended consequences of the statute. *See* Restatement (Second) of Contracts § 130 comment a (1979). Here, the jury concluded, despite Evans' vigorous defense, that Hodge was promised permanent employment and that he was nonetheless fired without cause. Under the traditional, narrow view of the statute generally endorsed by *Snyder* and *Cooper* and explicitly adopted by the vast majority of courts and commentators, the statute of frauds simply does not bar the enforcement of such jury verdicts.

As a diversity court, we must make a conscientious attempt to predict whether local courts would accept the conventional interpretation in light of the relevant indications in local law and elsewhere. There is no reason to believe that the District of Columbia courts would depart from the prevailing interpretation of the statute in this case. The majority has nonetheless devised and projected onto local courts a bizarre and unprecedented interpretation of the statute without support in the cases or commentary. While the consequences of today's decision may be relatively modest, I am nonetheless deeply disturbed by the majority's apparent willingness to ignore settled legal principles in order to deny Hodge his deserved relief.

I dissent.

30 years); *Thoma v. Wolverine World Wide, Inc.,* 352 F.Supp. 580 (W.D.Pa.1972) (oral one-year employment contract to begin several weeks after the contract was agreed to); *Price v. Press Publishing Co.,* 117 App.Div. 854, 103 N.Y.S. 296 (1907) (oral contract to pay $10,000 at the end of 16 months); *Paschall v. Anderson,* 127 Tex. 251, 91 S.W.2d 1050 (1936). These cases express the general rule that oral contracts to be performed in a stated, *fixed* period of time beginning at a future date are barred by the statute if the stated period ends after more than one year from the time the contract was made. *See, e.g.,* 2 Corbin on Contracts § 447, at 556–58 (1950 & Supp.1971).